ALLSTATE INSURANCE COMPANY, APPELLANT, *v.* U.S. ASSOCIATES REALTY, INC., APPELLEE.

---

(No. 10994—Decided August 17, 1983.)

*Mr. Chris T. Nolan* and *Mr. David C. Engle,* for appellant.

*Mr. Norman S. Carr* and *Mr. James M. Lyons, Jr.,* for appellee.

QUILLIN, P.J. Plaintiff-appellant, Allstate Insurance Company, paid $12,500 to Nancy Keister as a settlement for injuries she received while on the property of Terrance and Christine Marie Churchill. Allstate filed the within action to obtain contribution or indemnification from U.S. Associates Realty, Inc., whose negligence was claimed to have been the cause of Keister's injuries. The trial court denied Allstate's claim. We affirm.

### Facts

Terrance and Christine Churchill were insured by Allstate under a general liability homeowner's insurance policy. During the Summer of 1980, Mr. and Mrs. Churchill decided to sell their house. They contacted Marilyn Bontempo, a sales representative of U.S. Associates, defendant-appellee herein. Bontempo visited the Churchills at their residence and executed a listing agreement between the Churchills and U.S. Associates.

At the time they entered into the agreement, the Churchills told Bontempo that no one should go into the backyard because they kept their large dog there. At the Churchills' insistence, Bontempo included the following notation on the listing agreement: "Do not go in backyard. Unfriendly dog, unless owners are home."

Information on the Churchills' house was thereafter entered into a "multiple listing" computer service, whereby all subscribing real estate brokers can attempt to sell a house which is listed by another broker. Bontempo did not, however, include the Churchills' prohibition about entering the backyard in the information entered into the computer.

On July 24, 1980, James Langmead, an agent with a multiple listing broker, Chris and Associates, took Paul and Nancy Keister to see the Churchills' house. Mr. and Mrs. Churchill were not at home during the Keisters' inspection of the residence, nor had Langmead been informed of the Churchills' prohibition about entering the backyard. Consequently, upon completing their inspection of the interior of the house, Mr. and Mrs. Keister, along with Langmead, went outside to the backyard. It was there that Mrs. Keister encountered the Churchills' dog — an encounter which caused Mrs. Keister to fall and sustain a broken right wrist.

Mrs. Keister's claim against the Churchills for her injuries was paid by Allstate under the terms of the Churchills' homeowner's policy. Allstate then filed a complaint against U.S. Associates, for contribution and/or indemnification.

The case was tried to the court on

November 22, 1982. The court found that due to the Churchills' express prohibition about entering their backyard, Nancy Keister was a trespasser at the time of her canine encounter. The court, therefore, concluded that the Churchills were not liable under R.C. 955.28, which otherwise imposes absolute liability on the owner of a dog for injuries caused by the dog. The court also found that U.S. Associates was one hundred percent responsible for Mrs. Keister's injuries, and that the only liability attributable to the Churchills was their vicarious liability for the negligence of their agent.

On the basis of these findings, the trial court ruled that Allstate, as the subrogee of the Churchills, had a valid claim for indemnification from U.S. Associates, but that such claim was lost due to Allstate's failure to notify U.S. Associates of the pending claim against the Churchills and Allstate's intent to settle the same. Accordingly, the court entered judgment in favor of U.S. Associates. Allstate now appeals from that judgment.

Assignment of Error I

"The trial court erred in holding that Nancy Keister was a trespasser as a matter of law when the evidence showed that she was on the Churchills' property at the express or implied invitation of the owners, the Churchills, and for a purpose in which the owners, the Churchills, had a beneficial interest."

R.C. 955.28, the so-called dog bite statute, provides, in part, that:

"* * * The owner or keeper shall be liable for any damage or injuries caused by a dog unless such damage or injury was to the body or property of a person who, at the time such damage or injuries were sustained, was committing a trespass on the property of the owner, or was teasing, tormenting, or abusing such dog on the owner's property."

Allstate argues that Mrs. Keister was not a trespasser on the Churchills' property at the time of her injuries. We agree, and sustain the first assignment of error. As defined by the court in *Garrard* v. *McComas* (1982), 5 Ohio App. 3d 179, at 181:

" 'A trespasser is a person who enters or remains upon land in the possession of another *without a privilege* to do so created by the possessor's *consent or otherwise.*' " (Emphasis *sic*.) 2 Restatement of the Law, Torts 2d (1965) 171, Section 329.

Likewise, 2 Restatement of the Law, Torts 2d 176, Section 332, defines an "invitee" as follows:

"(1) An invitee is either a public invitee or a business visitor.

"* * *

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

The court in the first paragraph of the syllabus of *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308 [46 O.O. 177], used the following terminology in describing the same concept:

"In tort law an 'invitee' means a business visitor, that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest. * * *"

We think it is clear that Mrs. Keister entered the Churchills' property as a business visitor. The Churchills desired to sell the premises, and by listing the house with U.S. Associates and the multiple listing service, they extended an express invitation to potential buyers to inspect the property for sale.

The Comment on Subsection (3) of Section 332 states, at page 181, in part, that:

"*l. Scope of invitation.* * * *

"* * * the visitor has the status of an invitee only while he is on the part of the land to which his invitation extends — or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come. In deter-

mining the area included within the invitation, the purpose for which the land is held open, or the particular business purpose for which the invitation is extended, is of great importance. * * *"

Thus, having entered onto the Churchills' property as a business visitor with the express invitation of the owners, Mrs. Keister had the implied invitation to make a reasonable inspection of the premises consistent with the scope of the invitation. We believe that an invitation for potential buyers to inspect the property carries with it an implied invitation to inspect the entire premises unless such invitation has been expressly limited by the owner.

Comment *l* of Subsection (3) also tells us at page 182 that:

"* * * Where it is customary that customers or patrons shall be free to go to certain parts of the premises, they are invitees there unless the possessor notifies them that the area of invitation is more narrowly restricted. * * *"

In the instant case, the Churchills did, in fact, limit the invitation by prohibiting entry into the backyard. However, the area is one which customarily invites inspection by a prospective buyer of a residence, and the record is clear that Mrs. Keister was not notified of the Churchills' limitation. She was, therefore, entitled to a reasonable belief that this area was within the scope of her invitation. Since the prohibition on entering the backyard was never revealed to Mrs. Keister, such prohibition had no effect on her continued status as a business invitee when she entered the backyard.

We, therefore, find that Mrs. Keister was rightfully on the premises by virtue of an invitation to inspect; that such invitation extended to all areas of the premises customarily subject to inspection by a potential buyer, including the backyard; and that Mrs. Keister was not notified that the area of the invitation was in any way restricted.

Accordingly, we conclude that since Mrs. Keister was in an area customarily within the scope of an invitation such as the Churchills' and was without notice of any restrictions on her invitation, she was an invitee, not a trespasser, at the time of her injuries. This means that the Churchills are subject to the absolute liability imposed by the dog bite statute (R.C. 955.28); however, as discussed below, our conclusion does not permit a reversal of the lower court's judgment rendered in favor of U.S. Associates.

### Assignment of Error II

"The trial court erred in holding that the Churchills, as tortfeasors, were only secondarily liable and as such, Allstate Insurance Company, having fully discharged the liability of their [*sic*] insured as well as the liability of U.S. Associates Realty, Inc., cannot seek contribution under Ohio Revised Code, Section 2307.31 for an amount in excess of the Churchills' proportionate share of common liability."

The ultimate question in this case is whether Allstate is entitled to contribution or to indemnification from U.S. Associates. The distinction is important in that if Allstate is entitled to a complete indemnification from U.S. Associates its claim therefor must fail due to its lack of notice to U.S. Associates regarding the pendency of the claim against the Churchills and Allstate's intent to settle. If, however, contribution is the appropriate means for Allstate to recoup its loss, such a claim is not barred by lack of notice to U.S. Associates.

R.C. 2307.31 states, in relevant part, that:

"(A) Except as otherwise provided in this section or section 2307.32 of the Revised Code, where two or more persons are jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. * * *

"* * *

"(D) This section does not impair any right of indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

"* * *

"(F) In determining the proportionate shares of tortfeasors in the entire liability their relative degrees of fault shall be considered. * * *"

The bulk of the case law in this state on the subjects of joint tortfeasors, joint and several liability, contribution, and indemnity was written prior to the adoption of R.C. 2307.31 which established the right of contribution between joint tortfeasors in Ohio. Thus, most of the definitions and applications of these concepts found in current Ohio case law were created during a time when contribution between joint tortfeasors was not allowed. As a consequence, many of these definitions and applications were established as a direct effort to escape the inequities often produced by the strict prohibition against contribution. With the adoption of R.C. 2307.31, much of our case law in this area is of questionable precedential value.

Nevertheless, it is fair to say that the concept of indemnity may be defined as the right, arising out of an implied contract, of a person who has been compelled to pay what another should pay, to obtain complete reimbursement. The courts in Ohio have recognized the distinction between one who is actually at fault, and another who, by reason of his relationship with the wrongdoer or by operation of law, has incurred tort liability without personal fault for the acts committed by such wrongdoer. 18 Ohio Jurisprudence 3d (1980) 464, Contribution, Indemnity, Etc., Section 96. Under such circumstances, the first person is said to be primarily liable and the latter is said to be secondarily, or vicariously, liable. Thus, where a person secondarily liable is compelled to respond in damages to an injured party, he may recoup his loss for the entire amount upon the basis of an implied contract of indemnity from the one who is actually at fault, and who, in fact, caused the injuries. This implied contract of indemnity arises only in the case of primary and secondary liability and not in the case of joint or concurrent tortfeasors. *Ohio Cas. Ins. Co.* v. *Ford Motor Co.* (S.D. Ohio 1977), 443 F. Supp. 80. The primary-secondary dichotomy has also been discussed in terms of active and passive negligence. See, *e.g., Cochran* v. *B. & O. RR.* (1974), 41 Ohio App. 2d 186 [70 O.O.2d 352].

Allstate argues that since R.C. 955.28 establishes an absolute liability on the Churchills, such liability must be labelled as active and primary. We disagree.

Liability, even though absolute and imposed by statute, may consist of active or passive negligence. Simply because the liability has been made absolute, it does not mean that, in all cases, there has been active negligence on the part of the party held liable. As we interpret the dog bite statute, R.C. 955.28 does not establish negligence *per se.* Rather, the statute establishes liability without regard to fault or the dog owner's negligence. *Hirschauer* v. *Davis* (1954), 98 Ohio App. 479 [58 O.O. 32], affirmed (1955), 163 Ohio St. 105 [56 O.O. 169]; *Silverglade* v. *Von Rohr* (1923), 107 Ohio St. 75. Thus, liability of the dog owner under the statute is not dependent upon, and cannot automatically be equated with, such dog owner's negligence.

There may be situations where, upon an examination of the facts, it can be shown that the dog owner has been guilty of some degree of negligence which contributed to another's injuries. In these situations, the dog owner is absolutely liable *and* actively negligent. On the other hand, a dog owner may have committed no negligent act; yet he is held absolutely

liable, without personal fault, for injuries caused by his dog.

If, in the former situation, the negligence of a third person is interjected, and when coupled with the dog owner's concurrent negligence proximately causes injuries to another, the negligent third person and the negligent dog owner are joint tortfeasors, and a claim for contribution will arise as between them when one is compelled to pay damages in excess of his proportionate share of the common liability. Under such facts, there is no right to indemnification.

If, in the latter situation, the dog owner is free from personal fault, but the negligent act of a third person is interjected so as to proximately cause injuries to another, the owner's lack of personal fault does not relieve him of his absolute liability to the injured party. We believe that such a situation presents an example of primary and secondary liability. In such a case, where a dog owner is subjected to personal liability under the dog bite statute as a direct result of the negligent or wrongful acts of a third person, the dog owner may maintain an action for indemnity against the negligent third party. This can only occur, however, where the dog owner is without fault, and the injuries to another have been proximately caused solely by the negligent or wrongful acts of a third person. However, if there is negligence of the dog owner which proximately contributes to the injury, he becomes a joint tortfeasor with the negligent third person, and indemnity is unavailable. In such case, contribution is the appropriate recourse.

Allstate argues that because the Churchills would be liable under the statute with or without the negligence of U.S. Associates, the Churchills are primarily liable. We disagree. The nature of the Churchills liability vis-a-vis U.S. Associates is not altered because absolute liability to the injured party has been imposed on the Churchills by force of statute. The fact remains that one party, without fault, has been subjected to liability as a direct and proximate result of the negligent acts of a third person. Although the Churchills' liability to Mrs. Keister is absolute, and may not be avoided by proof of their lack of negligence or by proof of U.S. Associates' negligence, such proof, while totally irrelevant as between the Churchills and Mrs. Keister, becomes the primary issue as between the Churchills and U.S. Associates. Thus, the determination of primary and secondary liability is not measured between the person held liable and the injured party; it is measured between the person held liable and the actual wrongdoer.

Allstate has not challenged the trial court's apportionment of fault between the Churchills and U.S. Associates. We, therefore, accept the lower court's finding of fact that U.S. Associates is one hundred percent at fault for Mrs. Keister's injuries and that no fault whatsoever could be attributable to the Churchills. Under these circumstances, we conclude that the Churchills' liability is secondary to that of U.S. Associates, and that Allstate's claim as the subrogee of the Churchills is for indemnity and not for contribution. However, being a claim for indemnification, it is barred by lack of proper notice to U.S. Associates. See *Globe Indemnity Co.* v. *Schmitt* (1944), 142 Ohio St. 595 [27 O.O. 525]. Accordingly, the assignment of error is overruled.

For the foregoing reasons, the judgment of the lower court in favor of U.S. Associates is affirmed.

*Judgment affirmed.*

BAIRD and GEORGE, JJ., concur.