RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0007P (6th Cir.)
File Name: 02a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ALLAN D. MILLS,
            *Plaintiff,*

            *v.*

RIVER TERMINAL RAILWAY
COMPANY,
            *Defendant-Appellee/*
            *Cross-Appellant,*
            *Third Party Plaintiff,*


LAFARGE CORPORATION,
            *Defendant-Appellant/*
            *Cross-Appellee,*


ALLEGA SLAG RECOVERY,
INC.,
            *Defendant.*

Nos. 00-3762/3961

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-00724—Patricia A. Hemann, Magistrate Judge.

Argued: October 25, 2001

Decided and Filed: January 9, 2002

1

Before:  BOGGS, GILMAN, and BRIGHT[*], Circuit Judges.

———————

**COUNSEL**

**ARGUED:**    Michelle J. Sheehan, REMINGER & REMINGER CO., L.P.A., Cleveland, Ohio, for Appellant. Richard Gurbst, SQUIRE, SANDERS & DEMPSEY, L.L.P., Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Michelle J. Sheehan, David Ross, REMINGER & REMINGER CO., L.P.A., Cleveland, Ohio, for Appellant.  Richard Gurbst, Timotny J. Jarabek, SQUIRE, SANDERS & DEMPSEY, L.L.P., Cleveland, Ohio, for Appellee.

———————

**OPINION**

———————

MYRON H. BRIGHT, Circuit Judge.   Two railroad workers employed by River Terminal Railway Corporation (River Terminal) sustained injuries when a slag pit exploded. The employees brought an action against River Terminal under the Federal Employers' Liability Act (FELA) for damages from their injuries.  River Terminal in turn sought indemnification or, in the alternative, contribution from Lafarge Corporation (Lafarge) and Allega Slag Recovery, Inc. (Allega).  River Terminal alleged that these third parties were negligent and responsible for the explosion.

———————————————

[*] The Honorable Myron H. Bright, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

the party required to pay the money failed to make a good-faith effort to settle the case[.]"  Ohio Rev. Code § 1343.03(C).

A party has made a good-faith effort to settle when it has fully cooperated in discovery proceedings, rationally evaluated its risks and potential liability, not attempted to unnecessarily delay the proceedings, and made a good-faith monetary settlement offer, or responded to one in good faith. *Kalain v. Smith*, 495 N.E.2d 572, 574 (Ohio 1986).

In a summary consideration of the matter without a hearing, the district court denied prejudgment interest.  The court relied on *Werner v. McAbier*, 2000 WL 23108 at *7 (Ohio App. Jan. 13, 2000), for the proposition that a hearing is not required where an award appears unlikely.  The court determined that Lafarge had displayed sufficient good faith in its overall behavior during the litigation such that its failure to make an offer to settle did not dictate an award of prejudgment interest. *See Kalain*, 495 N.E.2d at 574 (stating that a party with a good-faith, objectively reasonable belief that it is not liable need not extend a monetary settlement offer).

The decision not to award prejudgment interest lies within the sound discretion of the court. *Id.*  We conclude that the district court did not abuse its discretion in denying prejudgment interest.

### IV.  Conclusion

Accordingly, we **AFFIRM** the judgment in all respects.

After settlement of the employees' claims, the district court[1] submitted River Terminal's third party claims against Lafarge and Allega to trial by jury.  The jury found in favor of River Terminal's indemnity claim against Lafarge.  The district court entered judgment for River Terminal for the settlement amounts plus attorneys' fees incurred in defending against the employees' lawsuits.  The court denied River Terminal's subsequent motion for prejudgment interest.

Lafarge appeals the judgment, contending that indemnification does not lie as a matter of law in this case.  River Terminal cross-appeals from the denial of prejudgment interest.  We **AFFIRM**.

### I.  Background

The events underlying this case took place on the night of September 30-October 1, 1996, near a blast furnace at LTV Steel (LTV).  The blast furnace produces molten iron and a byproduct, slag.  When the molten iron and slag are cast out of the furnace, the iron flows into specially constructed railroad cars.  River Terminal owns the locomotive, the cars, and the railroad system that transports the molten iron.  The slag runs into an adjoining pit.  Lafarge operated the slag pits at LTV on the night of September 30.  At midnight Lafarge's contract with LTV expired and Allega took over control of the slag pits.[2]

After a series of casts has filled the slag pit, a pit operator cools the hot slag with water from sprinklers above the pit.  There are drains in the pit to remove the water.  When the slag has cooled, the pit operators dig out and grade the pit to

---

[1] The Honorable Patricia A. Hemann, United States Magistrate Judge for the Northern District of Ohio, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2] Allega had hired Lafarge's employees; they stayed on the job as Allega employees after the midnight changeover.

ready it for the next series of castings.  The pit must be dry, because it can erupt if water is trapped beneath hot slag.  The more water trapped under the slag, the greater the likelihood and the magnitude of the eruption.

At approximately 12:45 A.M. on October 1, 1996, the slag pit erupted.  Pieces of slag flew through the air and landed on or around the River Terminal locomotive in which Allan Mills and Richard Wright were working.  Both men suffered injuries when they dove to the floor of the locomotive.  Mills and Wright filed personal injury lawsuits against River Terminal under FELA.  Mills filed his claim in federal court; Wright filed his claim in Ohio state court.

River Terminal filed third party complaints against Lafarge and Allega in both lawsuits, seeking indemnification for, or contribution toward, any liability River Terminal incurred for Mills's or Wright's injuries.  Before trial, River Terminal settled with Mills and Wright.  Shortly thereafter, River Terminal filed an amended third party complaint in federal court in which it added the Wright settlement to the pending federal court litigation.

River Terminal, Lafarge, and Allega all moved for summary judgment on the issue of indemnification.  The district court denied all motions on this issue.[3]  River Terminal's claims for indemnification and contribution went to trial before a jury.  The jury returned a verdict in favor of Allega as to both indemnification and contribution, but returned a verdict for River Terminal on its indemnification claim against Lafarge.  The jury found that River Terminal had not been negligent with respect to Mills's and Wright's

---

[3]Lafarge and Allega also moved for summary judgment on the contribution claims and on breach of contract claims raised by River Terminal in its amended third party complaint.  The district court denied summary judgment as to contribution but granted summary judgment to both Lafarge and Allega on the breach of contract claims.  These rulings were not raised as error.

proximately caused injuries to its employees.  These matters were for the consideration of the jury, which by its verdict rejected those contentions.

Lafarge also argues that the evidence presented at trial does not support findings that Lafarge breached a duty or that any breach by Lafarge caused the injuries to Mills and Wright.  Lafarge argues that there is no evidence that it knew, or should have known, about any water in the slag pit.  Lafarge also points to testimony that its employees took due care in inspecting the slag pit on the night of September 30 and that this care continued right up to the changeover at midnight, at which point Lafarge's duty expired.

All these contentions were resolved adversely to Lafarge by the verdict of the jury.  The evidence showed that the eruption was caused by the presence of significant amounts of water in the slag pit.  Lafarge was responsible for the watering, grading and draining of the pit until approximately forty-five minutes before it erupted.  The jury could reasonably conclude that Lafarge had breached its duty to keep water from being trapped under hot slag, and that the breach caused Mills's and Wright's injuries.

Therefore, we reject Lafarge's contentions that the evidence does not support the jury verdict.

### III. Cross-Appeal

River Terminal appeals the district court's denial of its motion for an award of prejudgment interest.

Where state law claims come before a federal court on supplemental jurisdiction, the award of prejudgment interest rests on state law.  *See, e.g.*, *Stallworth v. City of Cleveland*, 893 F.2d 830, 834-35 (6th Cir. 1990).  The relevant Ohio statute provides that prejudgment interest is available on a judgment rendered in a civil action based on tortious conduct "if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict . . . that

negligence or through actual knowledge of a dangerous situation and acquiescence in the continuance thereof.

942 F.2d at 1051-52.

This rule applies here notwithstanding the absence of a sidetrack agreement. River Terminal became liable to its employees under FELA's standard of care, which requires that the employer provide a safe place to work. In considering Lafarge's summary judgment motion, we must view all facts in the light most favorable to River Terminal. Taking this view, River Terminal was *at most* passively negligent as compared to Lafarge's active negligence. Therefore, we conclude that Ohio law permits River Terminal's indemnification action. We affirm the district court's denial of Lafarge's motion for summary judgment of dismissal of the indemnity claim. Moreover, the jury verdicts against Lafarge, finding it wholly liable for the injuries to the employees of River Terminal, confirm River Terminal's right to indemnity.

### B.  Jury Verdicts

Lafarge also seeks to overturn the jury's findings that River Terminal was not negligent and that Lafarge was negligent. A jury's determinations as to breach of duty and proximate cause are reversible only if they are "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice." *Hardiman v. Zep Mfg. Co.*, 470 N.E.2d 941, 946 (Ohio App. 1984) (internal quotation marks omitted).

Lafarge lists several safety precautions that River Terminal could have taken to protect its employees. Lafarge alleges that River Terminal, by placing its railroad tracks near the slag pit, failing to build higher walls between the slag pit and the track, and failing to train its employees to respond correctly in the event of an eruption, breached a duty and

injuries, that Lafarge had been negligent with respect to their injuries, and that Lafarge was 100% responsible for the injuries.

The district court entered judgment for $712,000, which represented the settlement amounts and River Terminal's attorney fees in defending against Mills's and Wright's lawsuits. River Terminal moved to amend the judgment to include prejudgment interest. The court denied the motion. These appeals followed.

### II.  Discussion

### A.  Indemnification

The district court denied the summary judgment motions of all three parties as to the indemnification issue, based on its determination that there were genuine issues of material fact regarding whether the negligence of any party contributed to Mills's and Wright's injuries. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). We review *de novo* the court's denial of Lafarge's motion for summary judgment. *Monks v. Gen. Elec. Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990).

Lafarge argues that the basis for indemnification presented to the jury does not exist under Ohio law. Lafarge asserts that Ohio law recognizes an implied contract for indemnity solely where the tortfeasors share a common duty to the injured parties and are so related as to make one party secondarily liable for the wrongs committed by the other. Lafarge emphasizes in its brief that the only relationships found by Ohio courts to meet this standard are those between wholesaler and retailer, abutting property owner and municipality, independent contractor and employer, and

master and servant.[4] Thus, Lafarge contends in the circumstances here, where no contractual relationship exists between River Terminal and Lafarge, indemnification cannot lie as a matter of law. We reject this contention.

The Ohio Supreme Court has recognized the right of indemnity against the primary tortfeasor on the part of one secondarily liable. "[W]here a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable." *Travelers Indem. Co. v. Trowbridge*, 321 N.E.2d 787, 789 (Ohio 1975).[5]

Under Ohio common law, indemnity may lie in favor of a party who was not actively negligent but is nonetheless made liable under the law. *Albers v. Great Cent. Transp. Corp.*, 60 N.E.2d 669, 671 (Ohio 1945) (stating that a case of primary and secondary liability arises where a person "by reason of his

---

[4]This list is found in several Ohio state court opinions, but no case states that this list is exhaustive. *See, e.g., Motorists Mutual Ins. Co. v. Huron Road Hosp.*, 653 N.E.2d 235, 238 (Ohio 1995) (quoting *Reynolds v. Physicians Ins. Co. of Ohio*, 623 N.E.2d 30, 31 (Ohio 1993)); *Losito v. Kruse*, 24 N.E.2d 705, 706 (Ohio 1940); *Cochran v. B. & O. R.R.*, 324 N.E.2d 759, 761 (Ohio App. 1974) (noting that the relationships in the list are "examples" of relationships that may give rise to an implied contract of indemnification). Indeed, cases in the Ohio Court of Appeals have concluded that indemnification is available between parties that do not share a relationship in the list. *See, e.g., Allstate Ins. Co. v. U.S. Assocs. Realty, Inc.*, 464 N.E.2d 169 (Ohio App. 1983) (concluding that indemnity action will lie on the part of an insurer as subrogee for homeowner against a realty company); *Ohio Fuel Gas Co. v. Pace Excavating Co.*, 187 N.E.2d 89 (Ohio App. 1963) (allowing indemnity action on the part of a gas utility against construction companies).

[5]The Ohio Supreme Court later overruled the *Travelers* decision in part. *See Motorists Mutual*, 653 N.E.2d at 238. However, the principle that an implied indemnity exists between parties who are primarily and secondarily liable was not a basis for that disapproval.

relationship to the wrongdoer or by operation of the law," is made liable); *see also Globe Indem. Co. v. Schmitt*, 53 N.E.2d 790, 793 (Ohio 1944) (stating that indemnity will lie where a party is held liable by inference of law rather than by reason of "active participation"); *Allstate Ins. Co. v. U.S. Assocs. Realty, Inc.*, 464 N.E.2d 169, 174 (Ohio App. 1983) (holding that liability imposed by statute may give rise to an action for indemnity where the party liable under the statute is merely passively negligent).

In *Parsons v. Sorg Paper Co.*, 942 F.2d 1048, 1050-53 (6th Cir. 1991), this court interpreted Ohio indemnity law as it relates to passive negligence. A railroad claimed indemnity against a tortfeasor whose active negligence injured a railroad employee. Lafarge attempts to distinguish *Parsons*, noting that the railroad based its indemnification claim on a written sidetrack agreement. Interpreting that agreement, however, required this court to rule whether a railroad that was liable under FELA, yet only passively negligent under Ohio law, may maintain an indemnification action against an active tortfeasor. *Parsons* held that it could. No subsequent state case has changed the principle applied in *Parsons*.[6] Quoting from *Lattea v. City of Akron*, 458 N.E.2d 868, 872-73 (Ohio App. 1982), *Parsons* stated:

More specifically, indemnity is the right of a person

who is only secondarily liable to recover from the person primarily liable for proper expenditures paid to a third party injured through the violation of their common duties. A person is secondarily liable to a third party where his negligence is only passive and joins with active negligence of another to cause the injury. A person is primarily liable through active

---

[6]*Motorists Mutual*, cited by Lafarge, does not directly address passive negligence as, in that case, the party seeking indemnification under subrogation rights admitted that its subrogor was "actively negligent." 653 N.E.2d at 238.