OPINION
{¶ 1} Third-party defendant/fourth-party plaintiff-appellant, National Engineering, Ltd. ("National"), appeals from the judgment of the Court of Claims of Ohio granting motions for summary judgment filed by plaintiffs/fourth-party defendants-appellees, Waverly City School District Board of Education ("Waverly") and Ohio School Facilities Commission ("OSFC") (collectively, "plaintiffs"), and a motion to dismiss filed by fourth-party defendant-appellee, A.J. Stockmeister, Inc. ("AJS").
 {¶ 2} This matter arises out of a construction project known as the Waverly City School District Permanent Improvement Project ("Waverly Project"). OSFC and Waverly entered into a Project Agreement on or about December 20, 2000, pursuant to which they agreed to collaborate on, co-fund, and co-own the Waverly Project. The Waverly Project involved demolition and asbestos abatement of existing buildings and the construction of four new buildings in the Waverly City School District.
 {¶ 3} On or about March 12, 2001, Waverly entered into an Agreement For Professional Design Services (the "Triad Agreement") with Triad Architects, Inc. ("Triad"), pursuant to which Triad was solely responsible for the design and construction *Page 3 
of the heating, ventilation, and air conditioning ("HVAC") systems for the Waverly Project. OSFC was identified as an intended third-party beneficiary in the Triad Agreement. Pursuant to the Triad Agreement, Triad was to "endeavor to ensure that the plans, specifications and materials proposed for use in the Project comply with the standards established by the [Ohio School Design Manual] and [OSFC's] policies with the exception of any variance approved by [OSFC]."
 {¶ 4} Triad engaged National to perform the design of the HVAC systems for the Waverly Project. While Triad claims that it entered into an oral contract with National for its design services, and National denies the existence of an oral contract, there is undisputedly no written contract between Triad and National. Furthermore, there is no contractual relationship between Waverly and/or OSFC on one side and National on the other.
 {¶ 5} In December 2004, after the four new buildings encompassed within the Waverly Project opened for classes, the freezer coils for the HVAC systems in all four buildings froze, causing damage.
 {¶ 6} On November 30, 2006, plaintiffs filed a complaint against Triad for breach of contract and professional negligence in the Pike County Court of Common Pleas. For their breach of contract claim, plaintiffs alleged that Triad breached its contractual obligations by failing to observe and implement Ohio School Design Manual requirements in the Plan Specifications and materials and throughout construction for the Waverly Project. Specifically, plaintiffs contend that, in contrast to an Ohio School Design Manual requirement for the inclusion of a variable flow cooling system in the HVAC systems, Triad designed systems, in part, for constant flow piping. For their *Page 4 
professional negligence claim, plaintiffs alleged that Triad breached its duty to exercise due care in designing the Waverly Project. Lastly, plaintiffs allege that Triad breached its contractual agreement to indemnify plaintiffs for damages incurred as a result of Triad's performance under the Triad Agreement.
 {¶ 7} On January 22, 2007, Triad filed a third-party complaint against National, alleging breach of contract and claiming entitlement to indemnification. Triad alleged that, if it is determined to be legally liable to plaintiffs, then National is liable to Triad for breach of contractual obligations to perform its services consistent with the applicable standard of care. Triad also alleged that it is entitled to complete indemnity from National, based on an implied right of indemnity, for all damages for which it is found liable to plaintiffs.
 {¶ 8} On April 2, 2007, National filed an amended answer to Triad's third-party complaint, along with a fourth-party complaint against Waverly, OSFC, and AJS. National's amended answer included ten affirmative defenses, including that "[a]cts and/or omissions of other third parties not under the control or direction of [National] caused or contributed to in whole or substantial part the damages complained of in the plaintiffs'] complaint and [Triad's] third-party complaint" and that "[negligent acts and/or omissions of the plaintiffs caused and/or contributed to the alleged damages in whole or substantial part, thereby barring plaintiffs' claims or limiting their recovery of damages."
 {¶ 9} In its fourth-party complaint, National alleged, in part, that OSFC breached a duty of care to Waverly by requiring a change from National's original HVAC system design, which utilized a constant flow pump, to a design using a variable flow pump. National alleged that the variable flow pump requirement imposed by OSFC caused or *Page 5 
contributed to plaintiffs' alleged damages. National further alleged that Waverly failed to exercise due care in the maintenance and operation of the HVAC systems and that AJS breached its contract and/or a duty of care to plaintiffs to perform construction services in a reasonable, workmanlike fashion.[1] National alleged that Waverly, OSFC, and AJS are joint tortfeasors with Triad and are liable for contribution pursuant to R.C. 2307.22 through 2307.25. Thus, National sought statutory contribution from OSFC on Waverly's claims, from Waverly on OSFC's claims, and from AJS on both OSFC and Waverly's claims. National also alleged that Waverly, OSFC, and AJS were actively and primarily negligent, and that any negligence by Triad and/or National was passive and secondary, entitling National to full indemnity from the fourth-party defendants.
 {¶ 10} After filing its fourth-party complaint, with claims for indemnification and contribution against OSFC, a state entity, National filed a Petition for Removal, and this matter was removed from the Pike County Court of Common Pleas to the Court of Claims. On May 10, 2007, plaintiffs filed a motion to dismiss or, in the alternative, for summary judgment on National's fourth-party claims for contribution and indemnity. In an entry dated June 12, 2007, the trial court stated that it would treat plaintiffs' motion as a motion for summary judgment. On July 17, 2007, National responded to plaintiffs' motion and filed motions to strike plaintiffs' supporting affidavits and for a continuance, pursuant to Civ. R. 56(F), to conduct discovery. On July 30, 2007, AJS filed a motion to dismiss National's fourth-party complaint pursuant to Civ. R. 12. *Page 6 
 {¶ 11} The trial court held an oral hearing on the motions for summary judgment and to dismiss on October 11, 2007. In a decision and separate judgment entry, filed March 21, 2008, the trial court granted the motions for summary judgment and to dismiss National's fourth-party complaint, holding that National's claims for contribution were barred by the economic-loss doctrine and that there were no allegations in National's complaint giving rise to a claim for indemnity. The court accordingly dismissed National's fourth-party complaint and remanded this matter to the Pike County Court of Common Pleas for proceedings on plaintiffs' complaint and Triad's third-party complaint.
 {¶ 12} National filed a timely notice of appeal and asserts the following assignments of error
First Assignment of Error:
 THE TRIAL COURT ERRED TO [NATIONAL'S] PREJUDICE BY DENYING ITS MOTION FOR ADDITIONAL TIME TO CONDUCT DISCOVERY UNDER CIV.R. 56(F) AFTER CONVERTING TWO OF THE MOTIONS TO DISMISS INTO MOTIONS FOR SUMMARY JUDGMENT.
 Second Assignment of Error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING [NATIONAL'S] CONTRIBUTION AND INDEMNITY CLAIMS BARRED BY THE ECONOMIC LOSS DOCTRINE WHILE THE NEGLIGENCE CLAIMS UPON WHICH THEY ARE BASED REMAIN PENDING.
 Third Assignment of Error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING [NATIONAL'S] INDEMNITY CLAIMS NOT TO STATE A CAUSE OF ACTION. *Page 7 
 Fourth Assignment of Error:
 BECAUSE THE TRIAL COURT ERRED IN DISMISSING NATIONAL'S CONTRIBUTION AND INDEMNITY CLAIMS AGAINST OSFC, THE TRIAL COURT ERRED IN DISMISSING THE OHIO COURT OF CLAIMS ACTION AND REMANDING TO THE PIKE COUNTY COURT OF COMMON PLEAS.
 {¶ 13} Our standard of review of both a summary judgment, pursuant to Civ. R. 56, and a dismissal, pursuant to Civ. R. 12(B)(6), is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711; DeMarco, Inc. v. Johns-Manville Corp., Franklin App. No. 05AP-445,2006-Ohio-3587, ¶ 16, citing Ritchie v. Ohio Adult Parole Auth., Franklin App. No. 05AP-1019, 2006-Ohio-1210, ¶ 16. In both cases, we apply the same standard as the trial court. Maust v. Bank One Columbus,N.A. (1992), 83 Ohio App.3d 103, 107; Cleveland v. Village ofMarblehead (Mar. 23, 2001), Ottawa App. No. OT-00-018.
 {¶ 14} A motion to dismiss under Civ. R. 12(B)(6) tests the sufficiency of a complaint, and, therefore, a court must limit its consideration to the four corners of the complaint and accept all factual allegations as true. DeMarco, Inc. at ¶ 16. Further, "before the court may dismiss the complaint, `* * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.'"State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs., 65 Ohio St.3d 545,548, 1992-Ohio-73, quoting O'Brien v. Univ. Community Tenants Union
(1975), 42 Ohio St.2d 242.
 {¶ 15} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, *Page 8 
show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to only one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 16} In its first assignment of error, National maintains that the trial court erred by denying its motion, pursuant to Civ. R. 56(F), for additional time to conduct discovery before ruling on plaintiffs' motion for summary judgment. An appellate court will not reverse a trial court's denial of a Civ. R. 56(F) motion absent an abuse of discretion. Id. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} Civ. R. 56(F) provides, in part, as follows:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
Under Civ. R. 56(F), the movant bears the burden of establishing why the party cannot present sufficient facts to justify its opposition to a motion for summary judgment without a continuance. Carolina Tobacco Co.v. Petro, Franklin App. No. 04AP-1125, 2006-Ohio-1205, ¶ 39. *Page 9 
 {¶ 18} The trial court did not expressly rule on National's Civ. R. 56(F) motion before issuing its final judgment entry. Consequently, we consider the motion to have been denied. Vahdati'bana v. Scott R.Roberts Assoc. Co., L.P.A., Franklin App. No. 07AP-581,2008-Ohio-1219, ¶ 19, citing Akron v. Molyneaux (2001),144 Ohio App.3d 421. Accordingly, we must determine whether the trial court abused its discretion in denying National's motion.
 {¶ 19} In its Civ. R. 56(F) motion, National claimed that it sought discovery to support its claims that OSFC's design requirements caused the alleged failure of the HVAC systems and that Waverly's employees were negligent in maintaining and operating the HVAC systems. National argued that it needed witness depositions, written discovery from other parties, and access to the HVAC systems to produce affidavits in opposition to plaintiffs' motion. National also submitted an affidavit from its attorney, Robert H. Eddy, who opined that National could not fully, adequately or properly respond to plaintiffs' motion without conducting discovery.
 {¶ 20} National argues that the trial court abused its discretion by granting summary judgment when National had not been permitted to conduct discovery. Even assuming that the trial court erred by denying National the opportunity to conduct discovery, however, we find that its error was harmless. It is clear that the trial court granted plaintiffs' motion on purely legal grounds, based on the pleadings and not on evidence submitted by plaintiffs. The court expressly declined to consider the affidavits attached to plaintiffs' motion and, instead, relied only upon the pleadings to conclude that National's claims failed as a matter of law. Specifically, the court found that "there are no allegations in the fourth-party complaint which would support the inference of *Page 10 
non-economic loss," without which "there can be no recovery in tort and no claim for contribution among joint tortfeasors." Further, the court concluded that "[t]he allegations of the fourth-party complaint do not give rise to an inference of secondary or vicarious liability on the part of National" to support a claim of indemnity. At oral argument before this court, all parties agreed that, despite the Court of Claims' order converting plaintiffs' motion to dismiss into a motion for summary judgment, the Court of Claims essentially decided plaintiffs' motion as one to dismiss for failure to state a claim pursuant to Civ. R. 12(B)(6).
 {¶ 21} The trial court's analysis of whether National's fourth-party complaint stated causes of action for contribution and/or indemnity involved solely legal issues and would have been the same under either Civ. R. 12 or 56. Thus, because the trial court granted plaintiffs' motion on purely legal grounds, we conclude that National was not prejudiced by the court's failure to grant additional time for discovery. National cannot show how the opportunity to present additional evidence would have had any effect on the Court of Claims' analysis. Moreover, National had adequate opportunity to respond to plaintiffs' legal arguments that the fourth-party claims failed to state a claim upon which relief could be granted. In fact, National's memorandum contra contained 14 pages of argument responding to plaintiffs' legal arguments. Accordingly, we conclude that the trial court did not abuse its discretion by denying National's Civ. R. 56(F) motion, and we overrule National's first assignment of error.
 {¶ 22} Before moving on to National's remaining assignments of error, we briefly discuss plaintiffs' argument that National's fourth-party claims against them constitute *Page 11 
improper practice under Civ. R. 14, which governs third-party practice in Ohio. Civ. R. 14(A) provides as follows:
 (A) When defendant may bring in third party
 At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * * The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff * * *. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. * * * A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant.
 {¶ 23} Plaintiffs argue that a claim may only be brought under Civ. R. 14(A) against a person not already a party to the action, but the plain language of the rule expressly belies that argument. Although a third-party plaintiff may only bring a third-party complaint against a non-party who is or may be liable over to the third-party plaintiff, the rule provides a third-party defendant with additional options. In addition to permitting a third-party defendant to proceed against a non-party who may be liable over to him on the third-party claim, the rule specifically provides that a "third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party
plaintiff." (Emphasis added.) Accordingly, the fact that plaintiffs were already parties to *Page 12 
this action does not, by itself, defeat National's claims against plaintiffs under Civ. R. 14(A).
 {¶ 24} Plaintiffs also argue that National's claims must fail under Civ. R. 14(A) because they are not derivative of or dependent upon the outcome of the plaintiffs' claims against Triad. Again, plaintiffs misapply Civ. R. 14(A). Plaintiffs correctly recognize that, because a third-party complaint under Civ. R. 14(A) arises only where a third-party plaintiff claims that a third-party defendant is liable to him for all or part of the plaintiff's claim, the third-party plaintiff's right to recover must arise from the plaintiff's successful prosecution of the main action. See Renacci v. Martell (1993), 91 Ohio App.3d 217, 221. No such limitation applies to claims brought by a third-party defendant against the original plaintiff, however. While any claim the third-party defendant asserts against a non-party must arise from the successful prosecution of the claims against the third-party defendant/fourth-party plaintiff, Civ. R. 14(A) permits the third-party defendant to assertany claim against the plaintiff arising out of the transaction or occurrence on which the plaintiff's claim is based. Accordingly, we do not conclude that National's claims against plaintiffs fail on that basis. See Yankoff v. Rehn (Nov. 8, 1976), Hamilton App. No. C-75549 (where lessor sued lessee, who in turn filed third-party complaint against assignee of lease, third-party defendant was entitled to maintain a claim, against the original plaintiff, arising out the lease transaction).
 {¶ 25} To the extent that National's fourth-party claims otherwise state claims upon which relief can be granted, we do not conclude that those claims were improperly brought under Civ. R. 14(A). Accordingly, we turn our attention to National's remaining assignments of error. *Page 13 
 {¶ 26} In its second assignment of error, National maintains that the trial court erred in dismissing its contribution and indemnity claims under the economic-loss doctrine while plaintiffs' negligence claim against Triad remained pending. "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss."Corporex Dev. Constr. Mgt, Inc. v. Shook, Inc., 106 Ohio St.3d 412,2005-Ohio-5409, ¶ 6, citing Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut.Ins. Co. (1989), 42 Ohio St.3d 40, 45, and Floor Craft Floor Covering,Inc. v. Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, 3. The economic-loss rule stems from the principle that, "[i]n the absence of privity of contract between two disputing parties the general rule is `there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" Floor Craft at 3, quoting Prosser Keeton, Law of Torts (5th Ed. 1984) 657, Section 92. Accordingly, "in the absence of privity of contract [or a sufficient nexus that can serve as a substitute for contractual privity,] no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications." FloorCraft at 8.
 {¶ 27} First, we note that the trial court dismissed only National's contribution claims on the basis of the economic-loss doctrine, and we, therefore, limit our discussion under the second assignment of error to National's claims for contribution. National alleges that OSFC, Waverly, and AJS are liable for contribution as joint tortfeasors with Triad for plaintiffs' alleged damages, pursuant to R.C. 2307.22 through 2307.25, which govern joint and several liability in tort. Based on the allegations in plaintiffs' complaint and National's fourth-party complaint, the Court of Claims *Page 14 
determined that plaintiffs suffered purely economic loss and concluded that National's contribution claim failed as a matter of law because, absent non-economic loss, there can be no tort recovery or claim for contribution among joint tortfeasors.
 {¶ 28} While National asserts numerous reasons that it believes the economic-loss doctrine does not bar its claims for contribution, we conclude that National's contribution claims fail as a matter of law for a more fundamental reason. National's contribution claims are based on R.C. 2307.22 through 2307.25, which provide for joint and several liability in tort and a right of contribution amongst joint tortfeasors. However, "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share." R.C. 2307.25(A). Thus, the right of contribution is a legal concept that applies only to joint tortfeasors. See St. PaulFire Marine Ins. Co. v. Cassens Transport Co. (C.A.6, 2004), 86 Fed.Appx. 869 (applying Ohio law).
 {¶ 29} Here, National does not claim that the fourth-party defendants (OSFC, Waverly, and AJS) are joint tortfeasors with National. Instead, National claims that the fourth-party defendants are joint tortfeasors with Triad. Moreover, no party has alleged a tort claim against National. While plaintiffs have alleged a claim of professional negligence against Triad, Triad's third-party claims against National are premised entirely on contract. Triad's third-party complaint contains claims against National only for breach of contract and indemnity. Unlike contribution, the right to indemnity arises from contract, express or implied. Henry v. Consol. Stores Internatl.Corp. (1993), 89 Ohio App.3d 417, 421, citing Travelers Indemn. Co. v.Trowbridge (1975), *Page 15 41 Ohio St.2d 11, paragraph two of the syllabus. As this court has previously noted, "whether common-law indemnity or an express contract of indemnity be involved, it arises from contract, not tort, even though the underlying action or claim giving rise to the right to indemnity is a tort action."Richards v. Gold Circle Stores (1986), 28 Ohio App.3d 39, 41. Because National has not been found liable in tort for plaintiffs' alleged damages and has not been named a defendant in any tort claims, we conclude that National's fourth-party complaint fails to establish that National is a joint tortfeasor in whose favor an independent claim of contribution exists.
 {¶ 30} National's inability to maintain independent contribution claims, however, does not necessarily preclude the use of the alleged negligence of Waverly and OSFC to limit the liability for which Triad seeks indemnity from National. In fact, Triad alleged, in its affirmative defenses to plaintiffs' complaint, that plaintiffs' own contributory negligence in the maintenance, operation, and repair of the HVAC systems caused plaintiffs' claimed damages. Additionally, National is entitled to assert its own defenses to plaintiffs' claims pursuant to Civ. R. 14(A). See Rabin v. Anthony Allega Cement Contr, Inc., Franklin App. No. 00AP-1200, 2001-Ohio-4057 (because third-party plaintiff had a possible res judicata defense to plaintiffs' claims, the third-party defendant was entitled to raise that defense against plaintiffs). This protects a third-party defendant from any laxity of or collusion with the original plaintiff by the third-party plaintiff. Klein Darling, Civil Practice (2nd Ed. 2004), 880, Section 14:19. In its answer to Triad's third-party complaint, National also alleged, as affirmative defenses, that acts or omissions of plaintiffs and other third-parties caused or contributed in whole or substantial part to plaintiffs' claimed damages, barring or limiting plaintiffs' recovery. Accordingly, through *Page 16 
these affirmative defenses, National may still attempt to limit any damages for which it may be held liable.
 {¶ 31} For the forgoing reasons, we conclude that the trial court did not err in dismissing National's claims for contribution, whether or not such claims would have been barred by the economic-loss doctrine. Therefore, we overrule National's second assignment of error.
 {¶ 32} National's third assignment of error concerns the trial court's dismissal of its indemnity claims. The trial court found that National's fourth-party complaint failed to state a claim for indemnity because the allegations in that complaint do not give rise to an inference of secondary or vicarious liability on the part of National.
 {¶ 33} A right to indemnity arises from contract, either express or implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement.Trowbridge, paragraph two of the syllabus. It is undisputed that there is no express contract between National on the one hand and OSFC, Waverly or AJS on the other. Therefore, the dispositive question under National's third assignment of error is whether National has a potential claim based on an implied contract of indemnity.
 {¶ 34} National argues that it is entitled to indemnification based on a primary/secondary liability theory. Ohio courts have "recognized the distinction between one who is actually at fault, and another who, by reason of his relationship with the wrongdoer or by operation of law, has incurred tort liability without personal fault for the acts committed by such wrongdoer." Allstate Ins. Co. v. U.S. Assoc. Realty,Inc. (1983), 11 Ohio App.3d 242, 246, citing 18 Ohio Jurisprudence 3d (1980) 464, Contribution, *Page 17 
Indemnity, Etc., Section 96. "Under such circumstances, the first person is said to be primarily liable and the latter is said to be secondarily, or vicariously, liable." Allstate Ins. Co. at 246. Secondary liability arises where a relationship exists between parties that permits one to be held liable for the consequences of the other's action.Mahathiraj v. Columbia Gas of Ohio, Inc. (1992), 84 Ohio App.3d 554,564. "[W]here a person secondarily liable is compelled to respond in damages to an injured party, he may recoup his loss for the entire amount upon the basis of an implied contract of indemnity from the one who is actually at fault, and who, in fact, caused the injuries."Allstate Ins. Co. at 246. Implied indemnification is only available in the limited circumstances where the party claiming indemnity owes only secondary legal responsibilities and is only passively negligent.Lingo v. Ohio Cent. RR., Inc., Franklin App. No. 05AP-206,2006-Ohio-2268, ¶ 36, citing Mahathiraj.
 {¶ 35} "`An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/ employer, and master/servant.'" Lingo at ¶ 35, quoting Reynolds v. Physicians Ins.Co. of Ohio (1993), 68 Ohio St.3d 14, 16. See, also, Wagner-Meinert,Inc. v. EDA Controls Corp. (N.D.Ohio 2006), 444 F.Supp.2d 800. In contrast, courts decline to find implied contracts of indemnity in the absence of a sufficient relationship between the party claiming indemnity and party alleged to be primarily liable. SeeReynolds (rejecting a *Page 18 
claim of implied indemnity based on the relationship between two physicians caring for a single patient where the physicians had distinct duties and acted independently).
 {¶ 36} None of the relationships listed in Reynolds that have been found to give rise to implied contracts of indemnity are present here. Moreover, like the trial court, we conclude that the allegations in the fourth-party complaint do not give rise to an inference of secondary or vicarious liability by National. While National argues that actions by plaintiffs and AJS contributed to plaintiffs' damages, National does not allege any relationship between itself and any other party that would give rise to vicarious liability. The trial court found that allegations of harm resulting from Waverly or OSFC's conduct, including OSFC's insistence that the HVAC systems utilized variable flow pumps as mandated by the Ohio School Design Manual, do not alter the relationship of the parties or the nature of the transaction so as to create an inference of secondary or vicarious liability. We agree. National's only relationship to OSFC and Waverly is as Triad's subcontractor, and National has no relationship to AJS, whose involvement in the Waverly Project was governed entirely by its separate contract with plaintiffs. We find no authority for concluding that the tenuous relationships between the parties here are sufficient to create an implied contract of indemnity. Any liability that National may incur arises not as a result of any relationship to the alleged wrongdoers, but by virtue of National's contractual relationship with Triad. Accordingly, we conclude that the trial court did not err in dismissing National's indemnity claims for failure to state a claim upon which relief can be granted, and we overrule National's third assignment of error.
 {¶ 37} National's fourth and final assignment of error asserts that the Court of Claims erred in remanding this case to the Pike County Court of Common Pleas upon *Page 19 
improvidently dismissing National's indemnity and contribution claims. Because we have concluded that the trial court appropriately dismissed the claims asserted in National's fourth-party complaint, we discern no error in the Court of Claims' remand to the Pike County Court of Common Pleas. Therefore, we overrule National's fourth assignment of error.
 {¶ 38} Having overruled each of National's assignments of error, we affirm the judgment of the Court of Claims of Ohio.
Judgment affirmed.
McGRATH, P.J., and T. BRYANT, J., concur.
T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] National alleges that plaintiffs contracted with AJS to furnish and install the HVAC systems, according to the approved plans, drawings, and specifications for the Waverly Project. *Page 1