[Cite as *Schneider v. Kumpf*, 2016-Ohio-5161.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BARBARA SCHNEIDER | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 26955 |
| | : | |
| v. | : | Trial Court Case No. 2015-CV-730 |
| | : | |
| MARK KUMPF | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 29th day of July, 2016.

. . . . . . . . . .

DAVID M. GAST, Atty. Reg. No. 0070082, CHRISTIAN A. JENKINS, Atty. Reg. No. 0070674, 2712 Observatory Avenue, Cincinnati, Ohio 45208
JEFFREY S. GOLDENBERG, Atty. Reg. No. 0063771, TODD B. NAYLOR, Atty. Reg. No. 0068388, One West Fourth Street, 18th Floor, Cincinnati, Ohio 45202
      Attorneys for Plaintiff-Appellant

MICHAEL W. SANDNER, Atty. Reg. No. 0064107, 2700 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423
MARY E. MONTGOMERY, Atty. Reg. No. 0069694, JOSEPH D. SAKS, Atty. Reg. No. 0088082, Assistant City of Dayton Prosecutors, 301 West Third Street, P.O. Box 972, Dayton, Ohio 45422
      Attorneys for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Plaintiff-Appellant, Barbara K. Schneider, Administrator of the Estate of Klonda S. Richey, appeals from a judgment dismissing her claims against Defendant-Appellee, Mark Kumpf. In support of her appeal, Schneider contends that the trial court erred in dismissing her action against Kumpf on the basis that Kumpf neither owned nor harbored the dogs that killed Klonda Richey.

{¶ 2} We conclude that the trial court erred in dismissing Schneider's claim against Kumpf, because any claim for damages is not restricted solely to claims against owners, keepers, or harborers of a dog. Furthermore, while R.C. Chapter 955 does not provide a private cause of action for statutory violations of a dog warden's duties, additional exploration is required regarding whether a special relationship existed between Appellant's decedent and Kumpf, such that Kumpf had a duty of care to the decedent for purposes of tort liability. Accordingly, the judgment of the trial court will be reversed and this cause will be remanded for further proceedings.

I.   Facts and Course of Proceedings

{¶ 3} This case arises from events leading up to Klonda Richey's unfortunate death at the hands of two large-breed Pit Bulls, Mastiffs, or Cane Corsos on February 7, 2014. Because this case was dismissed at the pleading stage, the allegations in the complaint will be assumed to be true for purposes of our discussion.

{¶ 4} According to the complaint, Richey had lived in her home at 31 East Bruce Avenue in Dayton, Ohio, for at least 24 years prior to her death. In March 2011, Andrew Nason purchased the home next door, and then began living at the home with Julie

Custer.   Nason and Custer owned two dogs, and Richey began experiencing problems with the dogs no later than August 2012.

{¶ 5} In July 2006, Defendant-Appellee, Mark Kumpf, was hired as the Director of the Montgomery County Animal Resource Center ("ARC") and as the Montgomery County, Ohio, Dog Warden.   Kumpf was still serving in those capacities at the time of Richey's death.   Kumpf had been involved in animal control since the early 1990's, and had changed his philosophy from an "enforcement mode" to an "education mode."   In the enforcement mode, Kumpf's approach had been to see how many animals he could pick up, how fast the animals could be gotten off the road, and how many summonses he could write.   In this mode, he averaged 100 to 150 citations per month.   In contrast, Kumpf's education approach involved issuing fewer summonses and focusing citations on the more serious cases.

{¶ 6} After Kumpf came to Montgomery County in 2006, he changed the focus of the ARC from enforcement to education.   The number of citations issued to citizens dropped by more than 33 percent in the first two years of his tenure.   At first, Kumpf's bosses were concerned about a drop in revenue.   However, Kumpf pointed out that he had taken in 2,000 fewer animals, and that licensing and adoption revenues had increased.

{¶ 7} Kumpf also instructed his deputy wardens to write fewer citations because he believed the courts were not doing their job, and were notoriously unhelpful with citation fines and enforcement.   In the two years before Richey's death, out of more than 20,000 calls about animals, only about 697 (about 3.4 percent) resulted in citations.   Of 60,000 dogs in Montgomery County, only 12 were designated as "nuisance" or

"dangerous" dogs in 2013.

{¶ 8} Kumpf was under the impression that before an animal control officer can issue a citation for a "dog at large," the officer must witness the dog off an owner's property and not under the owner's immediate control. However, at Kumpf's direction, officers were not patrolling. In addition, also at Kumpf's direction, dispatchers routinely refused to answer phone calls requesting service during business hours. Instead, dispatchers pushed a "divert" button on the phone and calls were sent to voicemail. All of the calls Klonda Richey made to ARC went to voicemail.

{¶ 9} Richey made about 13 calls to the Montgomery County Regional Dispatch Center and at least 13 calls to ARC to complain about Nason's dogs. The problems were severe enough that Richey paid to have a fence installed between the two houses and to have a security camera pointed at Nason's home to capture video surveillance of the dogs entering her property unrestrained and off leash. In one of the calls, Richey reported that Nason "let his aggressive pit/mastiff run loose while she was walking to work and threatened to let it have her for a treat." Doc. #13, First Amended Complaint, ¶ 14. According to Kumpf, he met with ARC officers daily to discuss calls that had been received. As a result, Kumpf would have been aware of Richey's calls and complaints.

{¶ 10} On August 8, 2012, Richey called ARC to complain that the dog from 35 Bruce (Nason's property) was loose and had charged her. The ARC officer noted that Richey had called the police, who responded, but the dog owners did not answer the door. After the police came out, the dog was reported loose again. An ARC officer came out and issued a written "dog at large" violation for a brown Pit Bull on August 9, 2012.

{¶ 11} On September 25. 2012, Richey called ARC twice to report the dog was loose and was very aggressive. According to their 2012 dog licenses, Nason's dogs were non-neutered male dogs. Kumpf has observed that unaltered male dogs are involved in the majority of fatal attacks. An ARC officer responded the following day and issued another written warning for a violation of R.C. 955.22(C). The field activity report for this incident indicated that there were no prior violations for this owner, which was untrue.

{¶ 12} Richey sought a civil protection order against Nason in Dayton Municipal Court in January 2013, but the protection order was denied. On March 16, 2013, Richey called the ARC to report that the dog was loose again. She told ARC that the dog had come after her before, and that the neighbor would let the dog loose to go after her and her cats. In addition, Richey told ARC that the mailman would no longer deliver mail to the street because of the dog, if the dog is not taken care of (presumably confined). Richey also said the dog had attacked her before. In response to this complaint, an officer knocked at Nason's door, but no one answered. The officer could hear a dog barking, and posted a warning for violation of R.C. 955.10, R.C. 955.21, and R.C. 955.22(C).

{¶ 13} On May 21, 2013, Richey called to report the dogs were loose again and had chased her. Two days later, an officer responded, and indicated that no one answered Nason's door. The officer did not see or hear a dog, and posted another written warning for a violation of R.C. 955.10, R.C. 955.21, and R.C. 955.22(C).

{¶ 14} Subsequently, on May 29, 2013, Richey called ARC to report that a Pit Bull Mastiff had been kept outside with no food or water the day before, and that the owner

had taken the dog off the chain and told it to attack her. The activity card for this incident indicated that there were prior violations, and that the dog had no license. The complaint does not indicate that Kumpf took any specific action as a result of this incident.

{¶ 15} On July 21, 2013, ARC received a call from the Montgomery County Sheriff's Office regarding 35 Bruce Avenue. The police indicated that two Bull Mastiffs were loose and were chasing the caller, who was identified as Richey. The ARC officer reported that he was unable to make contact with the dog owner. On July 22, 2013, the ARC received another call about 35 Bruce Avenue, indicating that two Bull Mastiffs were loose again. The report indicates that there were several prior violations, including one from the previous day. The following day (July 23, 2013), an ARC officer responded and issued another warning.

{¶ 16} On August 5, 2013, Richey called to report that Nason was now putting one of the Pit/Mastiff dogs in her yard to scare her. The activity card for that date noted there were several prior violations and no license for 2013 on file. The ARC officer responded and noted that no one was home and that the officer did not see or hear any dogs. A written warning for violations of R.C. 955.21 and R.C. 955.22(C) was posted.

{¶ 17} Richey called the ARC again on September 9, 2013, to report that a brown Pit/Mastiff was loose on the street. An officer once more issued warnings for violation of R.C. 955.21 and R.C. 955.22(C). A few days later, on September 12, 2013, Richey called ARC to report that the Mastiff was loose again the previous evening. The activity card noted that there was no current license, and that there were several prior violations. An ARC officer responded, and again made the same notations that had been made on September 9, 2013, about no one answering the door, no dog being loose, etc. Although

the ARC's summary database indicates written warnings were issued at this time, the record of what specific violations were included was not released in response to a public records request.

{¶ 18} On September 24, 2013, a complaint was made about a white Bull pup that was running loose. The activity card noted that the owner had two brown Mastiffs, and that there had been several prior violations. On the following day (September 25, 2013), an ARC officer responded and noted that there was no response to a knock on Nason's door. The officer could hear a dog inside. A written warning for violations of R.C. 955.21 "x 3" (presumably for the three dogs) and one violation of R.C. 955.22 (for the puppy) were issued.

{¶ 19} On January 31, 2014, Nason obtained new dog registrations for the two dogs who killed Richey. One week later, on February 7, 2014, the dogs killed Richey while she was outside on her own property.

{¶ 20} In February 2015, Schneider, as executor for Richey's estate, filed a wrongful death and personal injury action against the following defendants: Board of Commissioners of Montgomery County, Ohio; Montgomery County, Ohio; ARC; Kumpf; and various John and Jane Does. Schneider then filed a First Amended Complaint on July 15, 2015, against Kumpf only, in his individual capacity.

{¶ 21} In the amended complaint, Schneider set out the facts noted above, and alleged that Kumpf had acted recklessly in changing the enforcement policies of the ARC and in failing to follow the regulatory dog law provisions in the Ohio Revised Code. Schneider further alleged that Kumpf had acted recklessly by refusing to take action to declare the dogs dangerous despite knowing of multiple documented violations of R.C.

955.22(C). In addition, the complaint alleged that Kumpf was aware the dogs were nuisances, but recklessly avoided his mandatory duty to enforce R.C. 955.222 and to declare them nuisance dogs.

{¶ 22} According to Schneider, Kumpf also acted recklessly by failing to issue citations for violations of R.C. 955.21 and by not impounding the dogs when they were unlicensed. Finally, Schneider alleged that Kumpf was reckless in interpreting the requirements of the law and in implementing the procedures his officers followed.

{¶ 23} In August 2015, Kumpf filed a motion to dismiss the complaint. Kumpf argued that he was immune from suit. Moreover, he contended that he could not be held liable for injuries caused by the dogs, because only harborers, keepers or owners of dogs can be held liable under statutory and common law.

{¶ 24} The trial court overruled the motion to dismiss insofar as immunity was concerned. In this regard, the court concluded that it could not find that Kumpf's conduct was negligent as opposed to reckless. However, the court agreed that Kumpf could not be held liable under the law pertaining to liability for dog-bites. The court stated that it found Schneider's arguments persuasive, but must defer to authoritative sources on the subject. Schneider timely appealed from the dismissal of the complaint.

## II. Liability for Injuries Caused by Dogs

{¶ 25} Schneider's sole assignment of error states that:

The Trial Court Erred by Dismissing Plaintiff-Appellant Barbara Schneider's Wrongful Death Action against Defendant-Appellee Dog Warden, Mark Kumpf, Based Solely on the Fact that Kumpf Neither Owned

Nor Harbored the Dogs that Killed Klonda Richey.

{¶ 26} Under this assignment of error, Schneider contends that negligent keeping is not the only basis for liability under Ohio common law for physical injuries caused by a dog. According to Schneider, limiting recovery in this manner carves out an exception that differs from accepted measures of assessing tort liability and would lead to absurd results. Schneider also notes that other states have permitted injured parties to maintain common law negligence claims against persons who are not harborers or owners.

{¶ 27} "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." (Citation omitted.) *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. All factual allegations in the complaint must be presumed true, and all reasonable inferences are made in favor of a non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). We review the trial court's decision on a de novo basis. *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.).

{¶ 28} In sustaining the motion to dismiss, the trial court concluded that it was bound primarily by two decisions: *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, and *Flint v. Holbrook*, 80 Ohio App.3d 21, 608 N.E.2d 809 (2d Dist.1992).

{¶ 29} In *Flint*, the plaintiff, who had been bitten by a Pit Bull dog, sued the dog's owner and the titled owner of the premises where the dog had been kept. *Id.* at 24. At the time of the injury, the dog's owner was purchasing the property through a land installment contract. The titled property owner was aware that the purchaser owned at

least one Pit Bull dog, which was classified as a vicious animal under R.C. 955.11(A)(4).[1] *Id.* After the trial court sustained the titled owner's motion for summary judgment, the plaintiff appealed to our court, asserting that the titled owner owed her a duty of care relative to the dog. *Id.* at 25.

{¶ 30} Our discussion first noted that in Ohio, suits for damages resulting from dog bites can be brought under a statute and the common law. *Id.*, citing R.C. 955.28 and *Warner v. Wolfe*, 176 Ohio St. 389, 393, 199 N.E.2d 860 (1964). We observed that R.C. 955.28 imposes strict liability on owners, keepers, and harborers, with the only contested issues being ownership or keepership of the dog, proximate cause, and the amount of damages. *Id.*, citing *Hirschauer v. Davis*, 163 Ohio St. 105, 109, 126 N.E.2d 337 (1955). (Other citation omitted.) In this regard, we observed that:

> An owner is the person to whom a dog belongs, while a keeper has physical control over the dog. * * * "In determining whether a person is a 'harborer' * * * the focus shifts from possession and control over the dog to possession and control of the premises where the dog lives." *Godsey v. Franz* (Mar. 13, 1992), Williams App. No. 91WM000008, unreported, 1992 WL 48532. Because a lease transfers both occupation and control of the premises to the tenant, a landlord's liability as a harborer for injuries inflicted by a tenant's dog would depend upon whether he permitted the tenant's dog in common areas. *Id.* * * * While a wife may be the harborer of a dog owned by her husband, this liability is based on her conduct in relation to the dog,

---

[1] This is no longer the case, as R.C. 955.11(A) no longer designates specific dog breeds as "dangerous" or "vicious."

not because of the relationship of husband and wife. * * * Thus, a harborer is one who has *possession and control* of the premises where the dog lives, and silently acquiesces to the dog's presence.

(Emphasis sic.) (Citations omitted.) *Flint*, 80 Ohio App.3d at 25, 608 N.E.2d 809.

{¶ 31} We further stated that:

Under common law, a plaintiff suing for injuries inflicted by a dog must show that the defendant owned or harbored the dog, that the dog was vicious, that the defendant knew of the dog's viciousness, and that the defendant was negligent in keeping the dog. * * * One can negligently keep and harbor a vicious dog without owning either the dog or the premises where the dog is kept. *Hayes v. Smith* (1900), 62 Ohio St. 161, 163, 56 N.E. 879, 882. Under common law, " * * * the gist of the action for injury by a dog known by its owner to be vicious is generally said to be not negligence in the manner of keeping the dog, but for keeping it at all." *Warner v. Wolfe*, *supra*, 176 Ohio St. at 392, 27 O.O.2d at 358, 199 N.E.2d at 862.

(Citation omitted.) *Flint* at 25-26.

{¶ 32} Ultimately, we held that the titled owner, i.e., the vendor of the property, was not liable under either R.C. 955.28 or the common law because he had retained only legal title as security for the debt, and the land contract had transferred the exclusive possession and control of the premises to the dog owner/vendee. The vendor, therefore, was not the owner, keeper, or harborer of the dog. *Id.* at 27-28.

{¶ 33} In *Beckett*, which was decided many years later, the Supreme Court of Ohio considered the question of whether plaintiffs pursuing claims for bodily injuries caused by

dogs must elect between proceeding under R.C. 955.28, or under the common law. *Beckett*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, at ¶ 1. At the time, the lower appellate districts disagreed about whether plaintiffs could proceed on both theories or must elect which claim to pursue. *Id.* at ¶ 4-5. After discussing the statutory and common law causes of action, the Supreme Court of Ohio concluded that the language in R.C. 955.28 did not indicate that it was intended to be the sole cause of action or that plaintiffs were required to elect between causes of action. *Id.* at ¶ 15.

{¶ 34} The plaintiff in *Beckett* had filed suit only against the dog owners. *Id.* at ¶ 1. The comments that the trial court in the case before us has relied on were made during the Supreme Court of Ohio's discussion of the common law cause of action. In this regard, the Supreme Court of Ohio stated that:

> There are two bases for recovery in Ohio for injuries sustained as a result of a dog bite: common-law and statutory. "At common law, the keeper of a vicious dog could not be liable for personal injury caused by the dog unless the person [keeper] knew of the dog's 'vicious propensities.' " *Bora v. Kerchelich* (1983), 2 Ohio St.3d 146, 147, 2 OBR 692, 443 N.E.2d 509, quoting *Hayes v. Smith* (1900), 62 Ohio St. 161, 56 N.E. 879, paragraph one of the syllabus. Thus, in a common-law action for bodily injuries caused by a dog, a plaintiff must show that (1) the defendant owned or harbored the dog, (2) the dog was vicious, (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness. *Hayes* at paragraph one of the syllabus. In a common-law action for bodily injuries caused by a dog, as in any other

common-law tort action, punitive damages may be awarded. *McIntosh v. Doddy* (1947), 81 Ohio App. 351, 359, 37 O.O. 203, 77 N.E.2d 260.

*Beckett* at ¶ 7.

{¶ 35} In the case before us, the trial court relied on the description of the common law cause of action in *Flint* and *Beckett*, and held that in order for liability to exist under the common law cause of action, the defendant must be an owner, keeper, or harborer of a dog.

{¶ 36} However, in *Beckett*, the Supreme Court of Ohio was not faced with the same issue as is present in the case before us. Furthermore, *Beckett* cited *Hayes*, which also involved a typical situation in which the party being sued is the owner of the dog.

{¶ 37} Specifically, in *Hayes*, the dog was part of the estate the defendants inherited, and they kept the dog at the property they had inherited, in order to guard the property. *See Hayes v. Smith*, 8 Ohio C.D. 92, 1898 WL 1328, *2 (Jan. 25, 1898), *reversed*, *Hayes v. Smith,* 62 Ohio St. at 187. However, the lower court's judgment in *Hayes* was not reversed on the sufficiency of the evidence or on the joint liability of the defendants. 62 Ohio St. at 183, 56 N.E. 879. Instead, reversal was based on the fact that the trial court had improperly allowed the plaintiff to ask hypothetical questions of witnesses who were not experts, and had also improperly failed to sustain defense objections to improper argument by plaintiff's counsel. 62 Ohio St. at 184-187.

{¶ 38} Furthermore, the *Bora* case, which is also cited in the above quotation from *Beckett*, was an action solely against a dog owner, and involved a choice of the statute of limitations that would apply. *See Bora v. Kerchelich*, 11th Dist. Geauga No. 962, 1981 WL 4291, *1 (Nov. 9, 1981). Both the court of appeals and the Supreme Court of Ohio

held in *Bora* that the six-year statute of limitations in R.C. 2305.07 for liabilities created by statute would apply, rather than the two-year limitations period for personal injury actions, because the action appeared to have been brought under R.C. 955.28. *Id. See also Bora*, 2 Ohio St.3d at 148, 443 N.E.2d 509 (affirming the court of appeals).

{¶ 39} We have extensively researched the subject of liability, reading hundreds of Ohio cases, and the answer is not as clear as Kumpf suggests. Common law actions primarily have been brought against a dog's owner or persons who are physically in control of dogs at the time of the injury, i.e., keepers. Attempts have been made to broaden liability to non-occupant owners of premises where a dog is located, perhaps because landlords may have greater assets to satisfy judgments. *See, e.g., Hill v. Hughes*, 4th Dist. Ross No. 06CA2917, 2007-Ohio-3885, ¶ 3 (plaintiff sues owner of dog, and the dog owner's father, who owns three adjacent properties. The properties included a business property where the son worked and the home where the son lived with the dog). These considerations apply in the case before us, as Schneider's counsel has indicated (referring to the dog owner, Nason), that " '[t]he finest attorneys in the world cannot coax blood from a stone.' " Reply Brief of Plaintiff-Appellant, Barbara E. Schneider, p. 5, quoting *Paterek v. Petersen & Ibold*, 118 Ohio St.3d 503, 2008-Ohio-2790, 890 N.E.2d 316.

{¶ 40} However, in situations involving landlords, the landowner must have maintained control of the premises and must have allowed the dog to be "kept in common areas or in an area shared by both the landlord and the tenant." (Citation omitted.) *Burgess v. Tackas*, 125 Ohio App.3d 294, 297, 708 N.E.2d 285 (8th Dist.1998); *Flint*, 80 Ohio App.3d at 25, 608 N.E.2d 809. " 'The control necessary as the basis for liability in

tort implies the power and the right to admit people to [an area on the leased premises] and to exclude people from it.' " *Kovacks v. Lewis*, 5th Dist. Tuscarawas No. 2010 AP 01 0001, 2010-Ohio-3230, ¶ 34, quoting *Cooper v. Rose*, 151 Ohio St. 316, 319, 85 N.E.2d 545 (1949). *See also Flint* at 26, citing *Cooper* at 319.

{¶ 41} In most of these cases, plaintiffs have been unsuccessful in demonstrating that a landowner has retained sufficient control of the premises to be liable. *Hill* involved one departure, where a majority of the panel concluded that factual issues existed regarding whether the father maintained control over the premises based on his admission that he had the right to require his son to get rid of the dog. *Hill* at ¶ 20. The dissent argued, however, that the attack did not occur in a common area of the premises, and that the issue of control alone was not enough to defeat summary judgment. *Id.* at ¶ 31-32 (Kline, J., dissenting).

{¶ 42} As Schneider notes, there are Ohio cases that allow claims involving injuries by dogs to be brought on general negligence theories, beyond situations where the defendant is a harborer, keeper, or owner of a dog (or a landlord who is considered a harborer because he or she retains control of the premises and the injury happens in a common area shared by the landlord and tenant).

{¶ 43} For example, in *Applegate v. Pizzurro*, 10th Dist. Franklin No. 86AP-1084, 1987 WL 12724 (June 9, 1987), a plaintiff who had been bitten by a dog filed suit against a father and son, who were joint owners of the property where the bite occurred. *Id.* at *1. However, the father rented his part of the property to his son. *Id.* Although the yard was gated, the latch on the gate was broken and the dog was able to escape and attack the plaintiff. *Id.* After suit was filed against both father and son on theories of

strict liability and common law negligence, the trial court granted summary judgment to the father, holding that he could not be held liable because he was not the owner or keeper of the dog. *Id.*

{¶ 44} The court of appeals disagreed, noting that:

Looking first to the common law claim of negligence, plaintiff asserts that defendant Lawrence Pizzurro [the father] was negligent in his repair of the gate, and that his negligent repair was the proximate cause of the injuries plaintiff sustained. Defendant's primary response is that, even under the common law theory of negligence set forth in plaintiff's complaint, to recover for injuries sustained due to a dog bite the plaintiff must prove that the defendant was either the owner or the keeper of the dog. We cannot agree with defendant. Plaintiff's contentions against Lawrence Pizzurro under common law negligence exceed the bounds of an action for dog bite against the owner or keeper of a dog. Accordingly, plaintiff need not demonstrate that Lawrence Pizzurro was an owner or keeper of the dog under a common law negligence claim for negligent repair of the gate at 899 Whitethorne Avenue.

(Footnote omitted.) *Applegate* at *2.

{¶ 45} In *Nottingham v. Akron Bd. of Edn.*, 81 Ohio App.3d 319, 610 N.E.2d 1096 (9th Dist.1992), a student was bitten by a dog that another student brought onto school premises. *Id.* at 322. The student and his parents subsequently sued the Board of Education, contending that its employee, a security guard, had been negligent by failing to adequately supervise the school parking lot where the attack occurred. *Id.* at 322.

The plaintiffs also alleged that the Board was negligent by failing to prevent the student from bringing the dog on the premises, and by failing to adequately train the guard. *Id.* at 323-324. The court of appeals rejected these arguments, but not because any liability under the common law or statute would apply only if the board or its guard were harborers, owners, or keepers of the dog. Instead, the court's decision was based on lack of proof that: (1) school personnel failed to "exercise that care necessary to avoid reasonably foreseeable injuries," *id.* at 322; (2) that the school undertook "to fortify the parking lot from all potentially dangerous intruders throughout the lunch break," *id.* at 323; or (3) that the guard's "lack of formal training" proximately caused the attack. *Id.* at 324. The standard applied by the court was whether the plaintiffs had "shown a breach of the common law duty of care." *Id.* at 323.

{¶ 46} In a similar situation, a dog owned by property sellers caused injury to a prospective buyer for their house. *See Allstate Ins. Co. v. U.S. Assoc. Realty, Inc.*, 11 Ohio App.3d 242, 243, 464 N.E.2d 169 (9th Dist.1983). The sellers had previously told the listing agent that no one should go into the back yard because they kept their large dog there, and the agent made a notation on the listing agreement to that effect. *Id.* However, the listing agent did not place this notation on the multiple listing, and when a different broker showed the house, the buyer went into the backyard, encountered the dog, and sustained a broken wrist. *Id.* After the owner's insurance policy paid the plaintiffs, it sued the insurer for the listing agency for indemnification and/or contribution. *Id.*

{¶ 47} The court of appeals concluded that the buyer was an invitee, and that the dog owners were subject to the absolute liability imposed on dog owners by R.C. 955.28.

*Id.* at 245. However, the court also indicated that this liability does not depend on, and cannot automatically be equated with an owner's negligence. *Id.* at 246. The court observed that in this situation:

> [T]he dog owner is free from personal fault, but the negligent act of a third person is interjected so as to proximately cause injuries to another, [and] the owner's lack of personal fault does not relieve him of his absolute liability to the injured party. We believe that such a situation presents an example of primary and secondary liability. In such a case, where a dog owner is subjected to personal liability under the dog bite statute as a direct result of the negligent or wrongful acts of a third person, the dog owner may maintain an action for indemnity against the negligent third party. This can only occur, however, where the dog owner is without fault, and the injuries to another have been proximately caused solely by the negligent or wrongful acts of a third person. However, if there is negligence of the dog owner which proximately contributes to the injury, he becomes a joint tortfeasor with the negligent third person, and indemnity is unavailable. In such case, contribution is the appropriate recourse.

*Allstate Ins. Co.* at 247.

{¶ 48} Although *Allstate Ins. Co.* involved claims for contribution or indemnification among insurers, this case clearly indicates that the agency which omitted the notice about the dog would be primarily liable under traditional negligence principles -- not because the agency owned, harbored, or kept the dog. If the dog owner also were negligent, the agency would be jointly liable for its own negligent acts. *Ledbetter v. Seward*, 10th Dist.

Franklin No. 00AP-929, 2000 WL 1808361, *3 (Dec. 12, 2000), directly speaks to this type of situation.

{¶ 49} In *Ledbetter*, when the plaintiff arrived to see a house that was for sale, the occupants' dog ran out and bit her.  *Id.* at *1.  Again, the showing card indicated the occupants had to be present for all showings, and that two dogs would be on the property and tied up.  *Id.*  After sustaining injury, the plaintiff sued the occupants, property owners, realty companies, and real estate agents.  *Id.*  The realtors and companies were granted summary judgment on the basis that the plaintiff had only raised a statutory claim and a claim for negligence for failing to maintain the premises in a safe condition, not "claims for ordinary negligence."  *Id.* at *2.

{¶ 50} The court of appeals reversed, stating that "We believe that the allegations in Ledbetter's complaint are sufficient to state a claim for ordinary negligence against the realtors.  Moreover, the trial court acknowledged in its decisions that Ledbetter had argued that the realtors failed to warn Ledbetter about the dogs, an argument consistent with a theory of ordinary negligence."  *Id.*

{¶ 51} In a case issued by our own district, the plaintiff was an invitee at a riding stable that was adjacent to a private residence owned by the Montgomery County Park District.  The Park District leased the residence to a party who owned a dog.  *Wysor v. Ricker*, 2d Dist. Montgomery No. 17144, 1999 WL 34837, *1 (Jan. 29, 1999).  The plaintiff wandered onto the leased property and was allegedly injured when the dog became excited and wound his leash around the plaintiff's legs.  *Id.*  Ultimately, the plaintiff sued the dog owner and the riding stable.

{¶ 52} At that time, the trial court required the plaintiff to elect between proceeding

under the common law or under R.C. 955.28.[2]   After the plaintiff elected to proceed under the statute, the trial court granted summary judgment for the defendants, based on the fact that the plaintiff was a trespasser.   This was an absolute defense to a claim under R.C. 955.28.   *Id.* at *2.   On appeal, we agreed with the trial court that the plaintiff was a trespasser and that this precluded any liability on the dog owner's part.   *Id.* at *6.

{¶ 53} During the appeal, the plaintiff also asserted two assignments of error regarding the liability of the riding stable.   First, he argued that the stable was negligent because it failed to keep its premises in a safe condition and also because it failed to warn him of latent dangers on the adjacent leased property.   *Id.* at *7.   We rejected these claims based on the lack of evidence in the record to support them.   In particular, we noted that the dog was tethered to the lamp post in plain view of the plaintiff.   *Id.* However, we did not reject the negligence claims on the basis that the stables could be held liable for the injury caused by the dog only as a harborer, owner, or keeper, or that the plaintiff could not bring a separate traditional negligence claim.   *Id.*   Had we concluded that this was the case, we would not have needed to discuss this issue; we would simply have overruled the plaintiff's argument based on the third assignment of error, which related to a harboring issue.

{¶ 54} Specifically, the third assignment of error was based on the contention that the riding stable was a "harborer" because it received mail at the leased address and its patrons often crossed the leased property.   *Id.* at *7.   We rejected this *separate* argument because there was no evidence that the stable was in possession and control

---

[2] This type of election was later rejected by the Supreme Court of Ohio.   *See Beckett*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624.

of the premises where the dog was tethered. *Id.* at *8.

{¶ 55} Accordingly, we cannot agree with the trial court and with Kumpf that recovery for injuries caused by dogs is restricted to situations involving owners, harborers, and keepers of dogs, or that *Flint* and *Beckett* so restrict recovery. Neither case dealt explicitly with this point. As was noted, *Beckett* only involved claims against a dog owner and the issue of whether a plaintiff was required to elect between a statutory and common law remedy. *Flint* dealt with premises liability and whether a vendor could be held liable for damages where he was not in possession and control of the property and the injury did not occur in common areas. *Flint*, 80 Ohio App.3d at 26, 608 N.E.2d 809. The application of law in *Flint* was consistent with typical negligence principles.

{¶ 56} More specifically, " 'in order to establish a cause of action for negligence the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting therefrom.' " *Strayer v. Cox*, 2015-Ohio-2781, 38 N.E.3d 1162, ¶ 28 (2d Dist.), quoting *Colville v. Meijer Stores Ltd.*, 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 23. (Other citation omitted.)

{¶ 57} As a general matter, "[a]n owner or occupier of a premises owes * * * invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger." *Blair v. Vandalia United Methodist Church*, 2d Dist. Montgomery No. 24082, 2011-Ohio-873, ¶ 15, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). However, "liability in tort is an incident to occupation or control." *Cooper*, 151 Ohio St. at 317, 85 N.E.2d 545. As was noted above, we cited *Cooper* in *Flint*, and concluded that the defendant could not be held liable for the injuries caused by a dog unless he

"controlled the premises, i.e., * * * had the necessary power to admit or exclude people from the property." *Flint* at 26, citing *Cooper* at 319. Thus, our decision was consistent with general tort requirements for holding an owner of premises liable for conditions existing at the property.

{¶ 58} We have also reviewed the law in other jurisdictions. Maine has a similar statutory and common law scheme for injuries caused by dogs. In *Henry v. Brown*, 495 A.2d 324 (Me.1985), the Supreme Court of Maine concluded that in common law actions for injuries caused by a dog, the fault of either a dog owner or injured party is basically irrelevant; the issue is whether the owner kept the dog with knowledge of the dog's vicious tendencies. *Id.* at 325. The court did note that some degree of negligence is implicit in the common law theory, but that " 'the degree of the defendant's care is irrelevant once it is shown that he kept the dog after knowing of its dangerous propensities.' " *Id.* at 326, fn. 7, quoting *Pettitt v. Lizotte*, 454 A.2d 329, 334 (Me.1982). (Other citations omitted.) The same is generally true in Ohio. An owner may exercise all reasonable care with respect to a dog, but, nonetheless, may be held liable for any injuries if the dog bites someone and the owner knows of the dog's vicious tendencies. In both Ohio and Maine, dog owners may also be held strictly liable by statute, without proof of scienter. *Id.* at 325.

{¶ 59} In *Henry*, the Supreme Court of Maine considered an issue it had not previously addressed, which was whether owners may be held liable for negligence as an independent theory. *Id.* at 326. The plaintiff in *Henry* had come to the defendants' home on a social call, to bring them a cake she had baked. The defendants' dog was on a chain by the garage door and began charging at the plaintiff and barking. *Id.* at 325.

The plaintiff was afraid of dogs, became frantic, stepped back, fell, and sustained injury. At no time did the dog come into contact with the plaintiff. After the plaintiff fell, the wife said that she had told her husband to put the dog in the back. *Id.*

**{¶ 60}** After the plaintiff brought suit for her injuries, summary judgment was granted against her on all three grounds of her complaint. These included: a common law action; a statutory action; and negligence. In considering the case, the Supreme Court of Maine first held that the lower court erred in granting summary judgment based on the lack of contact with the dog. *Id.* at 325-326. The court noted that it had never previously considered that issue because the prior cases had involved dog bites. However, the court observed that the majority of jurisdictions did not impose a contact requirement. *Id.* at 326.

**{¶ 61}** The Supreme Court of Maine next held that the lower court had erred in dismissing the negligence claim, which was based on the defendant's failure to warn her of both the dog and a dangerous condition in the driveway. *Id.* at 326 and fn. 6. In discussing this point, the court noted that it had not previously been presented with this issue, but attributed it to practical considerations. Specifically, "[a]s a practical matter, a plaintiff might choose not to proceed on a theory of negligence because of the more exacting requirements for establishing liability and the scope of the other theories of liability." *Id.* at 326.

**{¶ 62}** The court went on to comment that:

The Restatement (Second) of Torts recognizes that a dog owner's negligence can be a basis for liability without regard to whether the animal actually bit or came into contact with the plaintiff. Section 302(b)8 states

that a person might be chargeable with negligence if a third party is exposed to an unreasonable risk of harm by the foreseeable action of another person's animal. In comment d to section 302, the Restatement explains that a reasonable person is required to know the habits and propensities of animals and, insofar as that knowledge would lead him to identify as customary or normal a particular action on the part of an animal, he is required to anticipate that act and provide against it. Several courts have adopted a similar approach. *See, e.g., Sanders v. Davis*, 25 N.C.App. 186, 212 S.E.2d 554 (1975); *Henkel v. Jordan*, 7 Kan.App.2d 561, 644 P.2d 1348 (1982). Defendants have presented no compelling argument against the Restatement rule. We therefore hold that a dogkeeper's negligence may serve as an independent theory of recovery for damage caused by a dog. We disavow any contrary suggestion contained in our prior opinions.

*Henry*, 495 A.2d at 327.

**{¶ 63}** In a similar vein, the Supreme Court of Connecticut recognized that "[t]he common-law duty to restrain—and its replacement with a strict liability rule with respect to dogs—does not, however, exhaust the range of common-law theories of liability applicable to animal bites." *Giacalone v. Hous. Auth. of Town of Wallingford*, 306 Conn. 399, 405-406, 51 A.3d 352 (2012). The court went on to stress that "[t]his unremarkable fact is exemplified by *Williams v. Milner Hotels Co.*, 130 Conn. 507, 509, 36 A.2d 20 (1944), in which the plaintiff brought a negligence action against the owner of a hotel with a known rat problem after he was bitten by a rat while staying there. The innkeeper's liability was grounded not in the absurd premise that he had a duty to restrain the

offending rat, but, rather, in a general rule of premises liability, namely, that '[a]n innkeeper is required to use reasonable care to keep his inn in a reasonably safe condition for his invitees.' " *Id.* at 406, quoting *Williams* at 511.

**{¶ 64}** This duty of a landlord or innkeeper, however, as in Ohio, is limited to the areas of a premises over which the party in question retains control. *Id.* at 408. *See also Gentle v. Pine Valley Apts.*, 631 So.2d 928, 934 (Ala.1994) (stating that "the presence of a tenant's vicious dog in areas shared by other tenants constitutes a 'dangerous condition' and that a landlord must exercise reasonable care to prevent injuries from such a dangerous condition. In so holding, we do no more than apply ordinary negligence principles, analogizing this particular condition to a variety of comparable dangers traditionally triggering the duty of due care."); and *Noble v. Yorke*, 490 So.2d 29, 31-32 (Fla.1986) (indicating that a victim may sue a non-owner of dog for negligent maintenance of a gate confining the dog).

**{¶ 65}** In *Braese v. Stinker Stores, Inc.*, 157 Idaho 443, 337 P.3d 602 (2014), the plaintiff did not proceed under a theory of harboring, owning, or keeping in prosecuting a dog-bite action; instead, he alleged that a store that permitted individuals to bring animals on its premises violated traditional principles of common law negligence. *Id.* at 445. The Supreme Court of Idaho did not preclude such an action; it indicated that under the circumstances, allowing dogs on the property did not create an unreasonable risk of harm to members of the public. In this regard, the court relied on the following facts: (1) all dogs were presumed at common law to be harmless; (2) millions of customers entered the chain of stores every day, and during the past fifteen years, only one incident, on a public sidewalk adjacent to a store, had been reported; (3) the manager of the specific

store was unaware of any prior incidents involving dogs; and (4) the dog had been coming into the store for some time, and the manager and cashier had no knowledge that the dog would jump on a customer in the store. *Id.* at 445-446.

{¶ 66} Schneider has also submitted authority from other states where suit has been permitted against parties other than harborers, owners, or keepers, despite other case law in the state indicating that only owners or keepers of dogs may be liable at common law for injuries inflicted by the dog. For example, Tennessee, like Ohio, states and follows the rule that "actions to recover damages for injuries resulting from an attack by a dog have been based on negligence of the dog owner in failing to keep his dog securely, when the owner knew or should have known that his dog was vicious or dangerous." (Citations omitted.) *Fletcher v. Richardson*, 603 S.W.2d 734, 736 (Tenn.1980). Like the vast majority of Ohio cases, the action in *Fletcher* was brought against the owners of the dog. *Id.* at 735.

{¶ 67} As noted by Schneider, however, the Supreme Court of Tennessee also permitted an action against the City of Memphis, arising from the death of a woman mauled by her neighbor's pit bulls. *Chase v. City of Memphis*, 971 S.W.2d 380, 382 (Tenn.1998). The negligence claims against the City were based on the City's negligence in failing to follow-up on an obedience training requirement for the dogs, and its failure to impound the dogs. *Id.* at 383. After trial, the estate received a judgment and 40 percent of fault was assessed to the City. *Id.*

{¶ 68} On appeal, the Supreme Court of Tennessee held that the negligent inaction of the City's Animal Shelter (by failing to impound the dogs after expiration of time for compliance with an order for obedience training) was an operational act that was

not immune from suit under statutes pertaining to sovereign immunity. *Id*. at 384. The court further held that the "public duty doctrine," which "shielded public employees from tort liability for injuries caused by a public employee's breach of a duty owed to the public at large," did not apply. *Id*. at 385. This was based on the application of one of the exceptions to the doctrine, i.e., the special duty exception. *Id.* In this regard, the court found that the employees of the Animal Shelter affirmatively undertook to protect the decedent. *Id.* As a result, the court affirmed the judgment against the City. *Id*. at 385-386.

{¶ 69} Similarly, in another case cited by Schneider, a Washington court of appeals held that "the common law rule applies: only the owner, keeper, or harborer of the dog is liable" for harm caused by a dog. *Clemmons v. Fidler*, 58 Wash.App. 32, 34, 791 P.2d 257 (Wash.App. 1990). In particular, *Clemmons* explicitly states that "the settled law of Washington, is clear: only the owner, keeper or harborer of such a dog is liable. The landlord of an owner, keeper or harborer is not." *Id*. at 35-36. *See also Frobig v. Gordon*, 124 Wash.2d 732, 735, 881 P.2d 226 (1994) (holding that an owner, keeper, or harborer of a vicious or dangerous animal is liable in tort, but a landlord is not).

{¶ 70} Nonetheless, in *Gorman v. Pierce Cty.*, 176 Wash.App. 63, 307 P.3d 795 (Wash.App. 2013), the plaintiff, who was mauled by two dogs, sued the owners as well as the county, for negligently responding to complaints about the dogs before the attack. *Id*. at ¶ 1. The owners were sued for strict liability under a Washington statute. After a verdict in favor of the plaintiff, the county appealed, contending that it was not liable on the negligence claim due to the application of the public duty doctrine. *Id*. at ¶ 23. The court of appeals disagreed, finding that a "failure to enforce" exception applied. *Id*. at

¶ 29. Under this exception, "a government's obligation to the general public becomes a legal duty owed to the plaintiff when (1) government agents who are responsible for enforcing statutory requirements actually know of a statutory violation, (2) the government agents have a statutory duty to take corrective action but fail to do so, and (3) the plaintiff is within the class the statute intended to protect." *Id.* at ¶ 30, citing *Bailey v. Town of Forks*, 108 Wash.2d 262, 268, 737 P.2d 1257 (1987). In this regard, the court found that an ordinance in existence at the time created a duty to classify dangerous dogs, which the county failed to do. *Id.* at ¶ 31-36.

{¶ 71} Kumpf distinguishes the cases cited by Schneider on the basis that Ohio's statutes do not impose liability on political subdivisions and do not create an express duty to quarantine dogs. In addition, Kumpf argues that no there was no assumption of a special duty in this case.

{¶ 72} In *Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468 (1988), the Supreme Court of Ohio held that "[g]enerally, a municipality may not be found liable in negligence when its employees act or refuse to act so as to conform to a municipal ordinance and/or a state statute." *Id.* at paragraph one of the syllabus. The court adopted a special duty exception, for which the following elements must be shown: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Id.* at paragraph four of the syllabus.

{¶ 73} However, in a subsequent decision, the Supreme Court of Ohio concluded that the public duty rule adopted in *Sawicki* "does not apply to civil actions brought against employees of political subdivisions for wanton or reckless conduct." *Estate of Graves* v. *Circleville*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, ¶ 3. The court's decision was based on the fact that *Sawicki* was decided under very narrow circumstances (during a time when sovereign immunity had been abolished), and the enactment of R.C. Chapter 2744 eliminated the need for a common law public duty rule where the legislature had specifically extended immunity to political subdivisions. *Id.* at ¶ 12-20.

{¶ 74} The court stressed, however, that its decision would " 'not automatically open the floodgates to excessive governmental liability.' " *Id.* at ¶ 24, quoting *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 37. In this regard, the court stated that "[t]he absence of the public-duty rule will not automatically result in the creation of new duties and new causes of action. * * * Claimants who seek recovery in actions such as the present one based on purely statutory violations must still establish that the statute in question provides for a private right of action." *Id.*

{¶ 75} The pertinent statutes here are contained in R.C. Chap. 955. We have reviewed the entire chapter, and none of the sections explicitly provides for a private cause of action. The issue remains whether a private cause of action is implied.

{¶ 76} To decide if "a private right of action should be inferred from a statute, Ohio courts have relied on a three-part test adapted from the United States Supreme Court decision in *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26." *Anderson v.*

*Smith*, 196 Ohio App.3d 540, 2011-Ohio-5619, 964 N.E.2d 468, ¶ 10 (10th Dist.), citing *Strack v. Westfield Cos.*, 33 Ohio App.3d 336, 337, 515 N.E.2d 1005 (9th Dist.1986). (Other citations omitted.)   This test "examines (1) whether the statute creates a right in favor of the plaintiff, (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny a remedy through private right of action, and (3) whether it is consistent with the underlying purposes of the legislative scheme to infer such a remedy." *Id.*, citing *Strack* at 337.   (Other citation omitted.)   Recently, however, the Eighth District Court of Appeals stressed that the United States Supreme Court has gradually narrowed the *Cort* test by focusing "on the single factor of whether there was a legislative intent to grant a private right of action."   (Citations omitted.)   *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 8.

{¶ 77} This limitation in focus makes analysis somewhat more challenging in Ohio, because the Ohio General Assembly rarely discusses specific legislative intent, except when it responds to decisions of the Supreme Court of Ohio.   *See, e.g.*, S.B. 20, 1994 Ohio Laws 184, Section 10, indicating that the General Assembly's intent in enacting R.C. 3937.18(H) was to supersede the effect of the holding in *Savoie v. Grange Mut. Ins. Co.*, 67 Ohio St.3d 500, 620 N.E.2d 809 (1993).

{¶ 78} Our analysis of Chapter 955 does not indicate legislative intent to create a private right of action.   R.C. 955.01 requires dog owners to register their dogs with the county auditor and provide such information like the dogs' breed and ages, and the name and address of the owner.   After owners register and pay a fee, the auditor will issue a metal tag for the dog.   R.C. 955.08.   Dogs found not wearing valid tags are prima facie evidence of lack of registration, and this lack "shall subject any dog found not wearing

such a tag to impounding, sale, or destruction."   R.C. 955.10.

{¶ 79} R.C. 955.12 provides for employment of county dog wardens and deputies. The statute in effect at the time of Richey's death provided, in pertinent part, that:

The warden and deputies shall make a record of all dogs owned, kept, and harbored in their respective counties. They shall patrol their respective counties and seize and impound on sight all dogs found running at large and all dogs more than three months of age found not wearing a valid registration tag, except any dog that wears a valid registration tag and is: on the premises of its owner, keeper, or harborer, under the reasonable control of its owner or some other person, * * *.   A dog that wears a valid registration tag may be seized on the premises of its owner, keeper, or harborer and impounded only in the event of a natural disaster.

If a dog warden has reason to believe that a dog is being treated inhumanely on the premises of its owner, keeper, or harborer, the warden shall apply to the court of common pleas for the county in which the premises are located for an order to enter the premises, and if necessary, seize the dog.   If the court finds probable cause to believe that the dog is being treated inhumanely, it shall issue such an order.

The warden and deputies shall also * * * make weekly reports, in writing, to the board in their respective counties of all dogs seized, impounded, redeemed, and destroyed * * *.

Whenever any person files an affidavit in a court of competent jurisdiction that there is a dog running at large that is not kept constantly

confined either in a dog kennel registered under this chapter or one licensed under Chapter 956. of the Revised Code or on the premises of an institution or organization of the type described in section 955.16 of the Revised Code or that a dog is kept or harbored in the warden's jurisdiction without being registered as required by law, the court shall immediately order the warden to seize and impound the dog. Thereupon the warden shall immediately seize and impound the dog complained of. The warden shall give immediate notice by certified mail to the owner, keeper, or harborer of the dog seized and impounded by the warden, if the owner, keeper, or harborer can be determined from the current year's registration list maintained by the warden and the county auditor of the county where the dog is registered, that the dog has been impounded and that, unless the dog is redeemed within fourteen days of the date of the notice, it may thereafter be sold or destroyed according to law. * * * .

{¶ 80} R.C. 955.222(B) further provides that:

If a person who is authorized to enforce this chapter has reasonable cause to believe that a dog in the person's jurisdiction is a nuisance dog, dangerous dog, or vicious dog, the person shall notify the owner, keeper, or harborer of that dog, by certified mail or in person, of both of the following:

(1) That the person has designated the dog a nuisance dog, dangerous dog, or vicious dog, as applicable;

(2) That the owner, keeper, or harborer of the dog may request a hearing regarding the designation in accordance with this section. The

notice shall include instructions for filing a request for a hearing in the county in which the dog's owner, keeper, or harborer resides.

{¶ 81} If the owner asks for a hearing, the court may allow the dog to be kept in the owner's possession, but the dog is required to be confined or restrained pending final appeal in connection with the requirements in R.C. 955.22(D) that apply to dangerous dogs. R.C. 955.222(D).[3] If a dog is finally determined to be a dangerous dog, the owner will be required to follow certain provisions regarding transfer of ownership of the dog, confinement of the dog, and procurement of liability insurance. R.C. 955.222(E).

{¶ 82} A dangerous dog is defined by R.C. 955.11(A)(1)(a) as: "a dog that, without provocation, and subject to division (A)(1)(b) of this section, has done any of the following: (i) Caused injury, other than killing or serious injury, to any person; (ii) Killed another dog; (iii) Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code."

{¶ 83} R.C. 955.22(C) provides that:

> Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:
>
> (1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;

---

[3] These requirements include securing the dog in a locked pen with a top, locked fenced yard, or other locked enclosure at all times when the dog is on the premises of the owner, keeper, or harborer. R.C. 955.22(D). Other provisions discuss security when the dog is off premises, and muzzling.

(2) Keep the dog under the reasonable control of some person.

{¶ 84} Finally, R.C. 955.23 provides that "No county dog warden shall willfully fail to perform his duties under section 955.12 of the Revised Code or other duties required of dog wardens." On its face, this section seems to imply a private cause of action. However, the section is derived from G.C. 5652-14b, which was initially enacted in 1927. *See* H.B. 164, 112 Ohio Laws 347. At the time of its enactment, G.C. 5652-14g stated that: "The county dog warden of any county who willfully fails to perform his duties under section 5652-7 or other duties required of dog wardens by law shall upon conviction thereof be fined not less than twenty-five dollars nor more than fifty dollars." *Id.* at 352.

{¶ 85} G.C. 5652-14b was subsequently renumbered as R.C. 955.23, and it no longer contains the language about a fine and conviction. Nonetheless, R.C. 955.99(B) states that "[w]hoever violates section 955.10, 955.23, 955.24, or 955.25 of the Revised Code is guilty of a minor misdemeanor." Because the criminal penalty remains, a civil remedy is not implied by R.C. 955.23; to the contrary, the statutory scheme contemplates criminal prosecution of dog wardens for willful failure to perform their duties.

{¶ 86} Under the circumstances, we must conclude that R.C. Chap. 955 does not impliedly provide a private right of action for violation of the dog warden's statutory duties. This is consistent with a decision that Kumpf relied on in the trial court, i.e., *Marshall v. Kennedy*, 7th Dist. Belmont No. 86-B-3, 1988 WL 6518 (Jan. 21, 1988). In *Marshall*, the plaintiff filed an action against dogs owners, a dog warden, and the county commissioners, alleging that dogs came from private property onto a county highway and attacked the plaintiff. *Id.* at *1. The dog warden was sued for failure to carry out his duties. *Id.* However, the court of appeals concluded that R.C. 955.12 did not impose

liability upon the dog warden or deputy dog warden for injuries allegedly caused by a dog "running at large." *Id.*[4]

**{¶ 87}** Furthermore, the Supreme Court of Ohio has stressed that the state is protected by conventional negligence principles from "becoming the de facto guarantor of every injury somehow attributable to the actions of a state tortfeasor." *Wallace,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 38. In *Wallace,* the court had concluded that the public duty rule was incompatible with the State's consent under R.C. 2743.02(A)(1) to have suits in the Court of Claims determined in accordance with suits between private parties. *Id.* at paragraph one of the syllabus. During its discussion of this issue, the court pointed out that its jurisprudence already contained safeguards that satisfy the public policy concerns of the public duty rule. First, the State already had some protection for discretionary acts. *Id.* at ¶ 36. In addition, "actions * * * that do not sound in tort but seek recovery purely for a statutory violation will not necessarily lie against the state – particularly if the statute in question provides no private right of action." *Id.* at ¶ 37. This is the paragraph in *Wallace* cited by *Graves*, when the Supreme Court of Ohio mentioned that claimants who seek recovery "based on purely statutory violations must still establish that the statute in question provides for a private right of action." *Graves*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, at ¶ 24.

**{¶ 88}** To the extent that Schneider's action is not based on purely statutory violations like failure to classify the dogs as dangerous, *Wallace* also indicated that where

---

[4] The court also briefly commented that the liability under common law and statute was confined to the owners of animals. *Marshall* at *1. We have previously concluded that this is incorrect, and *Marshall* did not, in any event, state any reasoning, nor did it even cite any cases or statutes. The court's limited statement, therefore, has no persuasive effect.

tort liability is concerned:

> A state defendant, just like any private defendant, remains protected by traditional tort concepts of duty, including foreseeability and pertinent public-policy considerations. *Leake v. Cain*, 720 P.2d [152] at 160 [Colo. 1986]; *Chambers-Castanes v. King Cty.* (1983), 100 Wash.2d 275, 292, 669 P.2d 451 (Utter, J., concurring in the result). Moreover, our tort law already requires a special relationship in order to satisfy the duty element in certain types of negligence actions, such as actions based on failure to act or failure to control the conduct of a third person. *See Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449; *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 39, 521 N.E.2d 780; *see, also*, 2 Restatement of the Law 2d, Torts (1965) 116-122, Sections 314-315. Thus, when a duty is neither imposed by statute nor undertaken by an instrumentality of the state, the state defendant is already insulated from liability based on a failure to act.

(Footnote omitted.) *Id.* at ¶ 38

{¶ 89} The trial court mentioned the absence of a "special relation" between Richey and Kumpf when the court was distinguishing some cases that had found potential liability involving trailer-park owners who were not owners, keepers, or harborers of dogs. *See* Doc. #29, Decision, Order and Entry Granting Motion to Dismiss of Defendant Mark Kumpf, p. 15, discussing *Bundy v. Sky Meadows Trailer Park*, 12th Dist. Butler No. CA89-01-002, 1989 WL 125379, *1 (Oct. 23, 1989).

{¶ 90} Schneider contends that this point was not argued in the trial court and

cannot be raised on appeal. We disagree that this point was not raised. In the first place, Schneider raised the *Bundy* case in replying to Kumpf's motion to dismiss. *See* Doc. #25, Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, pp. 14-15 and 34. In addition, Schneider also cited the *Graves* case in this memorandum, arguing that the decision in *Marshall* was distinguishable, because *Graves* had held that the special duty exception to sovereign immunity would not apply in cases involving reckless conduct by employees of political subdivisions. *Id.* at pp. 34-35, citing *Graves*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201.

{¶ 91} Moreover, in responding to Schneider's memorandum, Kumpf noted that Schneider was arguing that he had a duty to Richey, and disputed this fact. *See* Doc. #28, Defendant Mark Kumpf's Reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 3. Kumpf also argued that R.C. 955.12 did not impose a duty on dog wardens for dogs running at large, and with respect to sovereign immunity, that Schneider could not show that Kumpf violated any statutory duty. *Id.* at pp. 6 and 7. The trial court responded to these arguments by discussing *Bundy*. Doc. #29 at p. 15.

{¶ 92} In *Bundy*, a trailer park had rules providing that animals must not run at large, and the park owners also knew that the dog in question had an affinity for roaming and biting small children. *Bundy*, 12th Dist. Butler No. CA89-01-002, 1989 WL 125379, at *2. The court concluded that for purposes of 2 Restatement of the Law 2d, Torts, Section 315 (1965), a special relationship existed because the park knew of the dog's vicious tendencies and had rules prohibiting animals from running at large. *Id.* at *3. The court, therefore, concluded that the trial court erred in granting summary judgment

for the trailer park owner on the plaintiff's negligence claim.[5]

{¶ 93} In the case before us, Kumpf's alleged tortious actions consist of omissions and failure to act to prevent injury to Richey.   2 Restatement of the Law 2d, Torts, Section 302 (1965), provides that:

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission, or

(b) the foreseeable action of the other, a third person, an animal, or a force of nature.

{¶ 94} Comment a to Section 302 further states that:

This Section is concerned only with the negligent character of the actor's conduct, and not with his duty to avoid the unreasonable risk. In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.   *The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty.*   As to the distinction between act and omission, or "misfeasance" and "non-feasance," see § 314 and Comments.

---

[5] Notably, for purposes of our prior discussion, the court also found that the trailer park owner was not a harborer of the dog.   *Bundy* at *4.   Thus, the action was being evaluated under traditional negligence principles and not on the basis that one must be a harborer for a negligence claim to exist.

If the actor is under no duty to the other to act, his failure to do so may be negligent conduct within the rule stated in this Section, but it does not subject him to liability, because of the absence of duty.

(Emphasis added.)

{¶ 95} 2 Restatement of the Law 2d, Torts, Section 314 (1965), also provides that "[t]he actor's realization that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

{¶ 96} Although *Chase*, 971 S.W.2d 380, involved the application of the "special duty" exception to the public duty doctrine, the court's comments are somewhat instructive. In that case, the court concluded that the special duty exception applied, and the City of Memphis, therefore, was liable for the plaintiff's death by mauling, because the animal shelter and its employee "affirmatively undertook to protect the plaintiff. They issued a letter to Ms. Stidham indicating that any fencing deficiencies would be corrected. The letter further indicated that the dogs would be enrolled into obedience training. The letter indicated that failure to comply with the Animal Shelter's order would result in the animals' immediate seizure. Ms. Stidham did not appeal the order and relied upon the undertaking of Lee and the Shelter to remedy the situation." *Id.* at 385.

{¶ 97} In the case before us, the allegations in the complaint fall somewhat short of alleging the same type of affirmative actions as in *Chase.* Upon consideration, however, we conclude that this issue is more appropriately suited for resolution at the trial court level, perhaps on summary judgment, particularly since the parties did not fully discuss this issue in the specific context of whether Kumpf's actions, fairly read, could fulfill the requirements for finding the existence of a special relationship, and, therefore, a

duty for purposes of tort liability.

{¶ 98} Furthermore, we agree with the trial court that a trier of fact could reasonably find that Kumpf's actions were reckless, at least based on the allegations in the complaint. Doc. #29, Decision, Order and Entry Granting Motion to Dismiss of Defendant Mark Kumpf, p. 14. As a result, we conclude that Schneider is entitled to conduct discovery on the issue of whether Kumpf owed Richey a duty, in order to give the trial court a full factual basis for ruling on the issue.

{¶ 99} Accordingly, Schneider's sole assignment of error is sustained. We disagree with the trial court that potential liability is restricted to owners, keepers, or harborers. However, the issue of whether Kumpf owed a duty to Richey requires further exploration.

III. Conclusion

{¶ 100} Schneider's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, J., concurring in judgment only:

{¶ 101} Appellee's Motion to Dismiss was based on (1) Kumpf's statutory immunity, and, even if not immune, (2) since he was not the harborer, or keeper of the dogs that killed Richey, he could not, as a matter of law, be liable for the actions of the dogs.

{¶ 102} The decision which is on appeal dismissed all claims because the trial

court found that Kumpf was not the harborer or keeper of the dogs and, therefore, could not be liable.

{¶ 103} Consistent with the trial court's judgment, the Appellant's only "Statement of the Assignment of Error" says the "trial court erred by dismissing . . . [the] action against . . . [the] dog warden . . . based solely on the fact that [the dog warden] neither owned nor harbored the dogs that killed [the decedent]."

{¶ 104} Similarly, the Appellee's "Issue presented for review" is "Whether, in order to state a claim in a common-law action for bodily injuries caused by a dog, the plaintiff must show that the defendants owned or harbored the dog."

{¶ 105} I agree with the majority's thorough review of the case law and its conclusion that the trial court erred in dismissing the complaint based on the fact that any claims for damages caused by a dog are restricted to owners, keepers, or harborers of the dog.

{¶ 106} I further agree that there are other legal and factual issues involved in this case that may need to be resolved in the trial court. However, I do not necessarily agree with any implication in our Opinion as to what these issues are or how they should be characterized and, therefore, concur in judgment only.

. . . . . . . . . .

Copies mailed to:

David M. Gast
Christian A. Jenkins
Jeffrey S. Goldenberg
Todd B. Naylor
Michael W. Sandner
Mary E. Montgomery
Joseph D. Saks
Hon. Mary Lynn Wiseman